**Jan BERNIE, Plaintiff,**

v.

**WATERFRONT LIMITED DIVIDEND HOUSING ASSOCIATION, et al., Defendants.**

**No. C–3–81–574.**

United States District Court, S.D. Ohio, W.D.

April 25, 1985.

William Compton, Dayton, Ohio, for plaintiff.

Roger Makley, Dayton, Ohio, for defendants.

DECISION AND ENTRY OVERRULING IN ITS ENTIRETY DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO CHANGE VENUE; CONFERENCE CALL SET

RICE, District Judge.

This case involves Plaintiff's pursuit of rescission and restitution under the Ohio Securities Act, Ohio Rev.Code § 1707.01, *et seq.*, with respect to his purchase of one-half of a limited partnership interest in Defendant Waterfront, a Michigan limited partnership formed to construct and operate a residential housing development in Michigan. Also named as Defendants are Kevin F. Buckley, Robert C. Kiefer, Hoffman Construction Co. and Robert Ballou, general partners in Waterfront, Continental Wingate Capital Corp. (Continental), and Shearson Loeb Rhodes, Inc. (Shearson). Defendants have filed a Motion to Dismiss or, in the Alternative, for Change of Venue (Doc. # 6). They argue that this Court lacks *in personam* jurisdiction and that, even should the Court decline to dismiss the case, the Court should transfer this matter to the United States District Court for the Southern District of New York.[1]

I. *Defendants' Motion to Dismiss for Lack of In Personam Jurisdiction.*

■ Plaintiff argues that *in personam* jurisdiction may be had over Defendants, based on the Ohio long arm statute. Ohio Rev.Code § 2307.382 provides, in pertinent part, that:

[A] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state. . . .

The Sixth Circuit has developed a three-part test to determine whether the application of the Ohio long arm statute provides sufficient contact between a non-resident defendant and the forum state so as to support personal jurisdiction. That test provides:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Welsh v. Gibbs*, 631 F.2d 436, 440 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir.1972).

■ Upon a challenge by Defendants, the burden shifts to Plaintiff to demonstrate the propriety of *in personam* jurisdiction over said Defendants. If the issue is to be resolved by the Court solely on the basis of pleadings and materials attached thereto, the Plaintiff need only make a *prima facie* case of jurisdiction in order to avoid a motion to dismiss. *Welsh*, 631 F.2d at 438. If the party seeking dismissal on jurisdictional grounds submits affidavits, the non-moving party may not rest upon allegations or denials in his pleadings, but must respond, by affidavit or otherwise, by setting forth specific facts showing that the Court has jurisdiction. *Weller v. Cromwell Oil Company*, 504 F.2d 927, 929 (6th Cir.1974). The burden of the Plaintiff, however, remains relatively slight, and the Court is required to consider the pleadings and affidavits in the light most favorable to that party. *Welsh*, 631 F.2d at 439.

In his affidavit, Plaintiff, an Ohio resident, attests that he first learned of the Waterfront Limited Partnership during a trip to New York City in December, 1980. Richard True, a Greenwich, Connecticut securities broker with Defendant Shearson, gave Plaintiff a ride from LaGuardia Airport into Manhattan at the suggestion of

---

1. The Court notes that its decision in the instant case was written prior to its receipt of the April 12, 1985 letter of Plaintiff's counsel, William G. Compton, with enclosed affidavit. Upon reading the same, it does no more than confirm the Court's position herein.

Dr. Robert Downer, another Ohio resident and acquaintance of Plaintiff's who had coincidentally taken the same commercial air flight to New York City as Plaintiff. As the three men drove into Manhattan, True discussed generally his background as a financial advisor in the tax shelter area. True and Plaintiff spoke again by telephone before the latter left New York City, and Plaintiff learned from True about the limited partnership interests in Waterfront which True was marketing as a result of an agreement between Defendants Shearson and Continental, the latter being the equities syndication manager responsible for the private placement of Waterfront limited partnerships.[2] True then arranged for a Continental representative to deliver certain materials concerning the Waterfront investment to Plaintiff before Plaintiff departed for Ohio.[3]

Plaintiff discussed the Waterfront investment with his accountant, Mr. Graf, upon returning to Ohio in January, 1981. Plaintiff contacted Mr. True by telephone from Ohio on at least two occasions during January to discuss the offering.[4] In mid-January, Continental mailed to Plaintiff, in Ohio, the legal documents necessary to consummate his purchase of an interest in Waterfront. Plaintiff executed these documents, including the subscription agreement and security agreement, in Ohio, thus committing himself to an ultimate investment of $43,200.00 for a 4.9% interest in Waterfront. Continental contacted Plaintiff by letter at his Dayton, Ohio address three more times, sending him additional information, requesting additional documents, and finally specifying that his first capital contribution be mailed to the partnership's escrow agent in Michigan.

■ On these facts, the Court concludes that, at least for purposes of Defendants' motion, Plaintiff has made out a *prima facie* case of jurisdiction. With respect to whether Defendants purposefully availed themselves of the privilege of acting in Ohio or causing a consequence there, the

---

**2.** True avers in his affidavit that Plaintiff indicated during their conversation over the telephone that he was interested in purchasing "one-half of a unit" in Waterfront. (Doc. #6, Exh. 1, ¶ 7). Plaintiff states in his affidavit that at no time during his stay in New York City did he agree, verbally or otherwise, to purchasing an interest in Waterfront. (Doc. #10, Exh. A, ¶ 5).

**3.** Defendants argue in the memoranda in support of their motion that Plaintiff in fact received in New York City all documents necessary to his purchase of a Waterfront limited partnership interest. Their support for this factual proposition is apparently the averment of Shearson broker True that "various execution documents" were among the materials delivered to Plaintiff in New York City by a Continental representative. (Doc. #6, Exh. 1, ¶ 8). Defendants have also appended to their motion an affidavit executed by David Faust, Continental's lawyer, which represents that, to the best of the affiant's knowledge and belief, none of the Defendants have had any contact with Plaintiff in Ohio. (Doc. #6, Exh. 2, ¶ 11).

The Court believes its evaluation of the sufficiency of the parties' affidavits in this matter to be governed by the standards of Fed.R.Civ.P. 56. Rule 56(e) requires that the facts alleged in an affidavit be made on personal knowledge.

Richard True admits that he did not himself make the delivery of Waterfront-related documents to Plaintiff in New York City. As a result, his affidavit cannot be considered as conclusively establishing Plaintiff's whereabouts in his receipt of the documents necessary to consummate his investment in Waterfront. David Faust's affidavit suffers from the same deficiency. Plaintiff's account of having received the necessary documents in Ohio, put forward in an affidavit based upon personal knowledge, must thus prevail for purposes of Defendants' Motion to Dismiss.

**4.** Plaintiff avers that his accountant, Richard Graf, contacted by telephone the local Shearson office in Dayton, Ohio, in order to discuss the Waterfront offering. (Doc. #10, Exh. A, ¶ 6). To the extent that this averment is offered for the truth of Graf's representation that local Shearson personnel were contacted, this portion of Plaintiff's affidavit is hearsay inadmissible under Fed.R.Evid. 802. *Williams v. AMF, Inc.*, 512 F.Supp. 1048, 1052 (S.D.Ohio 1981). With respect to this issue, Defendants have proffered the affidavit of Robert A. Leo, the vice-president of Defendant Shearson's office in Dayton. (Doc. #15). Leo's position in his affidavit is that no Shearson personnel in Dayton have had any contact, by person or by telephone, with Plaintiff or Richard Graf in connection with the Waterfront offering.

Court notes that the fact that much of the negotiation and solicitation of Plaintiff's investment occurred in New York is not as determinative of this issue as are the consequences of the contractual obligation in Ohio and the degree of interest which Ohio has in seeing that said obligations were faithfully executed. *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 382 & n. 23 (6th Cir.1968). The Ohio Blue Sky laws are evidence of Ohio's interest in protecting its citizens by making certain requirements of investment arrangements before they can be distributed in Ohio. Defendants, whether directly or through their agent, Continental, mailed a subscription agreement to Plaintiff in Ohio for his signature, thus freely and intentionally encouraging and allowing an Ohio resident to make a substantial investment in Waterfront. *In-Flight Devices*, 466 F.2d at 228; *Cairns v. Amway Corporation*, No. 1–84–0783 (S.D.Ohio 1984), slip op. at 10–11.

In *Martin v. Steubner*, 485 F.Supp. 88 (S.D.Ohio 1979), *aff'd*, 652 F.2d 652 (6th Cir.1981), *in personam* jurisdiction over nonresident defendants was found to exist in a factual setting quite akin to the matter herein. In *Martin*, the president of a Minnesota limited partnership sold an Ohio resident an interest in a Minnesota limited partnership formed to develop an ice rink in Minnesota. Plaintiff Martin was alerted to the investment through an advertisement taken by the partnership in the midwest edition of the *Wall Street Journal*. Martin then traveled unannounced from Ohio to Minnesota for discussions and negotiations regarding the investment. The subscription contract for the investment was sent to Martin in Ohio, where he executed said contract. Two letters were then mailed to Martin in Ohio by the Minnesota partnership. Unlike Defendant Shearson herein, defendants in *Martin* had no places of business in Ohio. The district court focused its inquiry into minimum contacts upon the mailing of the subscription contract to Ohio for Plaintiff's execution, and

the two letters subsequently mailed to Ohio. It concluded that, given Ohio's interest in protecting its citizens from the sale of securities which had not been evaluated by state regulators, these contacts were sufficient to support *in personam* jurisdiction as well as an extension of Ohio law to the investment transaction at issue. 485 F.Supp. at 100.

The district court's ruling in *Martin* was affirmed on appeal. *Martin*, 652 F.2d at 652. Indeed, the Sixth Circuit observed that the Supreme Court's interim pronouncement in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), with its example of contacts insufficient to support *in personam* jurisdiction for due process purposes, did not require a different outcome in *Martin*. *Id.* at 654. Given the manner in which Defendants in the instant case undertook to market the Waterfront partnership interests, the Court believes that said Defendants also should reasonably have anticipated being haled into court in Ohio. *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. Unlike the local and regional automobile dealers in *World-Wide Volkswagen*, the Defendant general partners of Waterfront, a Michigan limited partnership formed to develop property in Michigan, secured a New York corporation, Defendant Continental, as their promoter and agent. Continental then entered into an agreement with Defendant Shearson to market and sell Waterfront limited partnership interests. There is no evidence that Defendant Shearson, with its national scope, was in any way restricted by the other Defendants in its efforts to distribute the Waterfront offering; indeed, the Waterfront limited partnership agreement shows that Plaintiffs' fellow limited partners in Waterfront included residents of Maryland, California and Indiana. Thus, the foreseeability critical to due process in this case stems from Defendants' own affirmative reach into Ohio rather than upon the likelihood that Waterfront partnership interests, by their very nature as financial

investments, would find their way into Ohio.

The second portion of the Sixth Circuit's tripartate approach to jurisdiction poses the question of whether the cause of action asserted by Plaintiff arises out of Defendants' transaction of business in Ohio. Regardless of where the negotiations for Plaintiff's investment decision ensued, Defendants voluntarily entered into a contract, executed by Plaintiff in Ohio, with an Ohio citizen for the sale of a limited partnership interest. As the sale of that interest in violation of Ohio's Blue Sky laws is the focus of Plaintiff's action herein, Defendants' challenged conduct can be seen as having arisen out of their transaction of business in Ohio. *In-Flight Devices*, 466 F.2d at 229.

Finally, it must be determined whether the acts of Defendants or consequences caused by them have had a substantial enough connection with the forum state to make this Court's exercise of jurisdiction over the Defendants reasonable. As was the case in *Martin*, 485 F.Supp. at 100, Defendants must have contemplated that the acts culminating in the purchase of a substantial interest in Defendant Waterfront by Plaintiff, an Ohio citizen, would result in a continuing relationship between them and Plaintiff in Ohio. *See also Southern Machine*, 401 F.2d at 385. The general interstate involvement of a Defendant such as Defendant Shearson, while not a substitute for the direct contacts outlined under the first prong of this analysis, is nonetheless suggestive of its expectation that it may be involved in litigation far from its home base. *In-Flight Devices*, 466 F.2d at 234. Defendants point to the lack of physical contact and the passive conduct of at least some of the Defendants herein, two additional factors raised in *In-Flight Devices*. The court in *In-Flight Devices*, however, went on to note that, in a given situation, a letter or phone call may be as indicative of substantial involvement

with a forum state as physical contacts by defendants or their agents. 466 F.2d at 235. Given the letters and documents sent by Defendant Continental to Plaintiff in Ohio, Plaintiff's execution of the subscription agreement in Ohio, and the fact that both Continental and Shearson were undertaking marketing and promotional efforts on behalf of the remaining Defendants upon a nationwide basis and without the exclusion of Ohio as a potential market, the Court finds reasonable its exercise of jurisdiction over all Defendants herein.

For the reasons aforesaid, the Court finds that it may constitutionally exercise *in personam* jurisdiction over Defendants under the Ohio long arm statute.[5] Defendants' motion, insofar as it seek dismissal of Plaintiff's Complaint due to lack of *in personam* jurisdiction, is overruled.

## II. *Defendants' Motion, in the Alternative, for Change of Venue.*

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where it might have been brought. In a diversity action, venue is only proper in the judicial district "where all plaintiffs or all defendants reside, or where the claim arose." 28 U.S.C. § 1391(a). As Defendants in this action do not all reside in the Southern District of New York, the only manner in which venue could be properly laid in that district would be if Plaintiff's claim were found to have arisen in that district. In a case founded upon diversity jurisdiction, this question is governed by state law. *Wahl v. Foreman*, 398 F.Supp. 526, 529 (S.D.N.Y.1975). In this case, the claims stem from the alleged failure to register, in Ohio, the limited partnership interest which an Ohio resident contracted to purchase in Ohio. Ohio has the greatest interest in protecting its citizens with respect to sales of unregistered securities. Plaintiff's claim must be con-

---

5. Given this conclusion, the Court does not reach Plaintiff's argument that personal jurisdiction over Defendant Shearson is conferred by its status as a foreign corporation licensed to do business in Ohio and as a licensed dealer of securities in Ohio. (Doc. # 10).

sidered to have arisen in Ohio, and venue would thus not be proper in the Southern District of New York under 28 U.S.C. § 1391(a). The transfer sought by Defendants pursuant to 28 U.S.C. § 1404(a) is, then, also impermissible.

 Even assuming venue to be proper in the Southern District of New York, the Court is not persuaded that the equities of this case would dictate a transfer under 28 U.S.C. § 1404(a). Plaintiff has averred that litigation in the Southern District of New York would represent a substantial professional hardship for him. Much of the evidence to be introduced is located within the State of Ohio, as are several of Plaintiff's witnesses. Defendant Shearson maintains several offices in Ohio, and Richard True, a key witness for Defendants, is employed by Defendant Shearson, albeit in its Greenwich, Connecticut office. The Court concludes that, within the facts set forth in this case, Plaintiff's selection of a forum should prevail.

WHEREFORE, for the reasons set forth herein, Defendants' Motion, in the Alternative, to Change Venue is also overruled. Defendants' Motion to Dismiss or, in the Alternative, to Change Venue is thus overruled in its entirety.

Counsel listed below will take note that a telephone conference call will be had, between Court and counsel, at 1:15 p.m. on Wednesday, May 1, 1985, for the purpose of setting a trial date and other dates leading to the disposition of this case.