GREENE, Appellant and Cross–Appellee,

v.

WHITESIDE, Appellee and Cross–Appellant.

[Cite as *Greene v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–080379 and C–080429.

Decided Feb. 20, 2009.

---

William Flax, for appellant and cross-appellee.

Lindhorst & Dreidame, Barry F. Fagel, and Bradley D. McPeek, for appellee and cross-appellant.

DINKELACKER, Judge.

## I. Facts and Procedure

{¶ 1} Plaintiff-appellant and cross-appellee, Mark Greene, filed a complaint against defendant-appellee and cross-appellant, Robert Whiteside, alleging fraudulent misrepresentation and seeking an accounting. Whiteside filed a motion for summary judgment in which he argued that the trial court lacked personal jurisdiction over him. Although a magistrate had originally determined that the trial court lacked personal jurisdiction, the court ultimately overruled Whiteside's motion. Whiteside also filed a motion for summary judgment on the merits of the case. The court granted the motion on Greene's fraud claim, but it also ordered an accounting. Both parties have appealed the trial court's judgment.

{¶ 2} The record shows that Greene and Whiteside were cousins. Greene resided in Ohio, and Whiteside resided in Texas. Greene was an experienced businessman who had invested in a start-up company. Other than these facts, the parties' versions of events differ substantially.

### A. Greene's Version of Events

{¶ 3} According to Greene, Whiteside solicited him several times in Ohio about investing in Whiteside's new corporation called FuSaCo. This corporation was going to have the rights to manufacture and distribute a new explosion-mitigation technology in the United States. Whiteside sent Greene written material and a video explaining this technology.

{¶ 4} Greene stated that Whiteside had told him that the corporate structure was already in place and that Whiteside had a partner in Connecticut with expertise in the product. Whiteside also told Greene that he had an initial deadline to obtain $150,000 in funding from other investors and that he had the capitalization and "machinery" to produce and market the product. Based on these representations and Whiteside's claim that the investment "was as close to a slam dunk as I have ever seen," Greene sent him a check for $25,000.

{¶ 5} Despite repeated inquiries regarding his investment, Greene heard nothing from Whiteside. Subsequently, he received a certificate for "ten units" in a company called R & S Technologies, L.L.C. Whiteside had signed the certificate as both president and secretary.

{¶ 6} Greene did not find out until after filing his lawsuit that Whiteside's expert partner was no longer involved in the deal. He did not know whether FuSaCo had ever existed, and Whiteside did not inform him that instead of

creating a corporation, he had formed a new company totally under Whiteside's control. Greene also discovered that Whiteside had only $25,000 besides Greene's $25,000 investment.

## B. Whiteside's Version of Events

{¶ 7} According to Whiteside, he and his Connecticut partner had incorporated FuSaCo in Texas. They began trying to secure investors and to market the product. Whiteside first discussed the technology with Greene while they were on a hunting trip in Texas. He stated that Greene had been very interested in the product and had asked Whiteside to send him more information.

{¶ 8} Whiteside subsequently sent written materials and a video about the product to Greene in Ohio. A few days later, Greene called Whiteside in Texas and asked if he could invest $25,000. Greene's check was payable to FuSaCo, and Whiteside deposited it in FuSaCo's bank account.

{¶ 9} A short time later, Whiteside's Connecticut partner attempted to modify the terms of their proposed agreement by seeking substantially more money. Whiteside would not agree to his terms and ceased doing business with him and FuSaCo. He then started a new Texas company called R & S Technologies, L.L.C. He claimed that this new company would do the same thing as FuSaCo— produce and market the explosion–mitigation technology. Whiteside used Greene's investment for that purpose.

## II. Personal Jurisdiction

{¶ 10} We first address Whiteside's assignment of error in his cross-appeal. He contends that the trial court erred in overruling his motion for summary judgment on the issue of personal jurisdiction. He argues that he did not have sufficient minimum contacts with the state of Ohio to justify an Ohio court in assuming jurisdiction over him. This assignment of error is not well taken.

## A. Personal Jurisdiction Generally

{¶ 11} We are not sure that a motion for summary judgment is a proper way to raise the issue of lack of personal jurisdiction. Generally, the issue is raised by a motion to dismiss under Civ.R. 12(B)(2).[1] But we need not reach that issue. Although Whiteside did not file a motion to dismiss, he did not waive the defense because he raised it in his answer.[2] Further, we review the issue de

---

1. *State ex rel. Dann v. Bulgartabac Holding Group,* 10th Dist. No. 07AP–177, 2007-Ohio-6777, 2007 WL 4395514, ¶ 10.

2. See Civ.R. 12(B) and (H).

novo.[3] The plaintiff always bears the burden to establish personal jurisdiction. But when the court does not hold an evidentiary hearing, the plaintiff is entitled to have the factual allegations and any evidentiary materials construed in his or her favor.[4]

{¶ 12} In determining whether an Ohio court has personal jurisdiction over a nonresident defendant, the court must apply a two-part test.[5] It must determine (1) whether Ohio's long-arm statute [6] and the complementary civil rule [7] confer jurisdiction and (2) whether granting jurisdiction comports with due process.[8]

### B. Long–Arm Statute

{¶ 13} Both the long-arm statute and the corresponding civil rule allow an Ohio court to assume jurisdiction over any person "transacting any business" in the state.[9] Courts construe this phrase broadly. The word "transact" is broader than the term "contract" and includes in its meaning "to carry on business" and "to have dealings." [10]

{¶ 14} Several cases support the conclusion that disseminating financial information to Ohio investors constitutes transacting business in Ohio.[11] With the facts construed in Greene's favor, the record shows that Whiteside had repeated-

---

3. *Montgomery Towne Homeowners' Assn. v. Greene,* 1st Dist. No. C–070568, 2008-Ohio-6905, 2008 WL 5412485, ¶ 8; *Cundall v. U.S. Bank, N.A.,* 174 Ohio App.3d 421, 2007-Ohio-7067, 882 N.E.2d 481, ¶ 66.

4. *Natl. City Commercial Capital Co., L.L.C. v. FOC Fin. Ltd. Partnership,* 1st Dist. No. C–080283, 2008-Ohio-6834, 2008 WL 5384110, ¶ 9; *State ex rel. Dann,* 2007-Ohio-6777, 2007 WL 4395514, at ¶ 10.

5. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183, 624 N.E.2d 1048; *Natl. City,* 2008-Ohio-6834, 2008 WL 5384110, at ¶ 9.

6. R.C. 2307.382.

7. Civ.R. 4.3.

8. *U.S. Sprint,* supra, at 183–184, 624 N.E.2d 1048; *Natl. City,* supra, at ¶ 9.

9. R.C. 2307.382(A)(1); Civ.R. 4.3(A)(1).

10. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 235–236, 638 N.E.2d 541; *Natl. City,* 2008-Ohio-6834, 2008 WL 5384110, at ¶ 10.

11. See *Goldstein,* supra, at 235–236, 638 N.E.2d 541; *Herbruck v. Capital* (Sept. 27, 2000), 9th Dist. No. 19586, 2000 WL 1420282; *Corporate Partners, L.P. v. Natl. Westminster Bank P.L.C.* (1998), 126 Ohio App.3d 516, 521–522, 710 N.E.2d 1144; *Mansfield Properties, L.L.C. v. Med. Dev. Mgt., L.L.C.* (Sept. 5, 2008), N.D.Ohio No. 08 CV 668, 2008 WL 4186928; *Bernie v. Waterfront Ltd. Dividend Hous. Assn.* (S.D.Ohio 1985), 614 F.Supp. 651, 655–654.

ly solicited Greene in Ohio to invest in his company. Therefore, he was transacting business in Ohio. Given that Greene's investment ended up being a substantial percentage of Whiteside's capital to run his business, it is disingenuous to say that he was not transacting business in Ohio.

{¶ 15} Whiteside relies on a case from this court, *Estate of Poole v. Grosser,*[12] for the proposition that his conduct was too isolated to justify an Ohio court in asserting jurisdiction. In that case, we held that Kentucky doctors and a Kentucky hospital had not engaged in the sort of regular, continuous activity required to justify an Ohio court in assuming jurisdiction, when they had taken out listings in Ohio phone books, sent a brochure to Ohio, and maintained a few advertisements in Ohio.[13]

{¶ 16} But *Poole* did not involve R.C. 2307.382(A)(1), the transacting–business section of the long-arm statute. Instead, it involved R.C. 2307.382(A)(4), which allows an Ohio court to exercise jurisdiction over "any person causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used * * * or services rendered in this state." Since subsection (A)(4) contains a requirement that subsection (A)(1) does not, we do not find *Poole* to be dispositive.[14]

## C. Due Process

{¶ 17} The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which that individual has no meaningful contacts, ties, or relations.[15] A state may constitutionally assert personal jurisdiction over a nonresident defendant only if the defendant has minimum contacts with the state so that maintaining the suit does not offend "traditional notions of fair play and substantial justice."[16]

{¶ 18} The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The defendant must purposely avail itself of the privilege of acting

12. (1999), 134 Ohio App.3d 386, 731 N.E.2d 226.

13. *Poole,* 134 Ohio App.3d at 391–394, 731 N.E.2d 226.

14. See *Busch v. Serv. Plastics, Inc.* (N.D.Ohio 1966), 261 F.Supp. 136, 140–141.

15. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528; *Natl. City,* 2008-Ohio-6834, 2008 WL 5384110, at ¶ 14.

16. *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95; *U.S. Sprint,* supra, at 186, 624 N.E.2d 1048.

in the forum state, thus invoking the benefits and protections of its laws.[17]   The defendant's actions in the forum state must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.[18]

{¶ 19} In this case, a magistrate had originally found that maintaining the suit in Ohio would "offend traditional notions of fair play and substantial justice in violation of the Due Process Clause."   In so holding, the magistrate had relied upon Whiteside's version of events, which was improper.

{¶ 20} The trial court rejected the magistrate's decision.   It stated that "[t]he Court finds that Whiteside purposely established contacts with the state of Ohio and should have reasonably anticipated being haled into court in Ohio.   Mr. Green [sic] stated in his deposition that he first had a conversation about investing in Whiteside's company FuSaCo in Cincinnati, Ohio.   Mr. Green [sic] states that he received a phone call in Cincinnati soliciting his involvement.   Mr. Green [sic] stated in his affidavit that, 'I never seriously contemplated any involvement or investment in this venture before being solicited multiple times in Cincinnati by the Defendant in writing and by telephone or before receiving the supportive, collateral, materials delivered to promote its authenticity.' "

{¶ 21} Thus, the court concluded that Greene "had made a prima facie case of jurisdiction."   We agree with the trial court's analysis.   With the facts construed in Greene's favor, he demonstrated that Whiteside had purposely availed himself of the privilege of acting in Ohio, thus invoking the benefits and protection of Ohio law.   Whiteside had sufficient contacts with Ohio so that Greene's suit in Ohio did not offend traditional notions of justice and fair play.   Consequently, we overrule Whiteside's assignment of error.

### III.   Summary Judgment on Fraudulent Misrepresentation

{¶ 22} We now turn to Greene's appeal.   In his first assignment of error, he contends that the trial court erred in adopting the magistrate's decision to grant summary judgment to Whiteside on Greene's claim for fraudulent misrepresentation.   He argues that the magistrate's decision was based on a "one-sided adoption of appellee's allegations of fact."   In his second assignment of error, Greene contends that the magistrate's holding effectively failed to give any consideration to his affidavit.   Because these assignments of error are related, we consider them together.   We find that they are well taken.

---

17.   *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283; *Natl. City,* 2008-Ohio-6834, 2008 WL 5384110, at ¶ 15.

18.   *Natl. City,* supra, at ¶ 15; *Poole,* 134 Ohio App.3d at 394, 731 N.E.2d 226.

## A. Standard of Review

{¶ 23} Summary judgment is appropriate if (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor.[19] The trial court has an absolute duty to consider all pleadings and evidentiary material when ruling on a motion for summary judgment. It should not grant summary judgment unless the entire record shows that summary judgment is appropriate.[20]

{¶ 24} Whiteside's version of the facts differed radically from Greene's. As we have previously stated, "[t]his case presents a classic example of what cannot be resolved by summary judgment: namely, two different versions of a story, with the outcome dependent on credibility." [21]

## B. Greene's Affidavit Did Not Contradict his Deposition Testimony

{¶ 25} Whiteside argues that at his deposition, Greene acknowledged that he had invested in the explosion-mitigation technology and that he had no preference for an investment in FuSaCo over R & S Technologies. Thus, Whiteside contends, Greene's later affidavit, which was contradictory to that testimony, could not be used to defeat summary judgment.[22]

{¶ 26} We disagree. Greene's affidavit did not contradict his deposition testimony. Whiteside has taken passages from Greene's deposition out of context. Greene did acknowledge that ultimately the name of the company marketing the technology did not matter to him. But from the beginning, Greene contended that the existence of a corporation with the proper corporate structure, whatever its name, and the involvement of Whiteside's partner with expertise in the technology were important factors that he had considered in investing his money. He claimed that he did not agree to invest in a limited-liability company solely under Whiteside's control. Consequently, his affidavit merely clarified his deposition testimony, and the trial court erred in failing to consider it.

---

19. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267; *Stinespring v. Natorp Garden Stores* (1998), 127 Ohio App.3d 213, 215, 711 N.E.2d 1104.

20. *Westfield Ins. Co. v. Towne Invest. II, Inc.*, 11th Dist. No. 2006–L–026, 2006-Ohio-5830, 2006 WL 3184051, ¶ 19–20; *Kelly v. Coca–Cola Bottling Co.*, 1st Dist. No. C–030770, 2004-Ohio-3500, 2004 WL 1486056, ¶ 21.

21. *Wygant v. Continental Ins. Agency* (Jan. 22, 1999), 1st Dist. No. C–980012, 1999 WL 22260.

22. See *Linder v. Am. Natl. Ins. Co.*, 155 Ohio App.3d 30, 2003-Ohio-5394, 798 N.E.2d 1190, ¶ 14–15.

## C. Genuine Issues of Fact Exist

{¶ 27} An action for fraudulent misrepresentation requires proof of (1) a misrepresentation (or concealment where there is a duty to disclose), (2) that is material to the transaction, (3) made falsely, with knowledge of or reckless disregard as to its falsity, (4) with the intent of misleading another into relying on it. There must also be (5) justifiable reliance on the misrepresentation or concealment, and (6) resulting injury proximately caused by the reliance.[23]

{¶ 28} Greene cites numerous examples of how Whiteside's conduct was a breach of fiduciary duty under Texas law. We agree with the trial court that these arguments are irrelevant because Greene did not plead breach of fiduciary duty in his complaint. The plaintiff cannot fulfill his burden to show a triable issue of fact by asserting new claims in response to a properly supported motion for summary judgment.[24]

{¶ 29} Nevertheless, while Greene did mistakenly assert in his complaint that Whiteside had deposited his check into his personal account, he still presented sufficient evidentiary materials to meet his burden to show that material issues of fact existed for trial. Specifically, issues of fact existed as to whether Whiteside had materially misrepresented the facts or had concealed information related to FuSaCo's existence and its corporate formalities, and his relationship with his expert partner.[25]

{¶ 30} Consequently, we hold that the trial court erred in granting Whiteside's motion for summary judgment on the issue of fraudulent misrepresentation, and we sustain Greene's two assignments of error.

## IV. Summary

{¶ 31} In sum, we affirm that part of the trial court's judgment holding that it had personal jurisdiction over Whiteside. We also affirm the trial court's judgment ordering an accounting. We otherwise reverse the trial court's entry of summary judgment for Whiteside on Greene's cause of action for fraudulent

---

23. See *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus; *Rose v. Zaring Homes, Inc.* (1997), 122 Ohio App.3d 739, 743–744, 702 N.E.2d 952.

24. *Bradley v. Sprenger Ents., Inc.*, 9th Dist. No. 07CA009238, 2008-Ohio-1988, 2008 WL 1849649, ¶ 8; *White v. Mt. Carmel Med. Ctr.*, 150 Ohio App.3d 316, 2002-Ohio-6446, 780 N.E.2d 1054, ¶ 30.

25. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; *Stinespring*, 127 Ohio App.3d at 216, 711 N.E.2d 1104.

misrepresentation, and we remand the case for further proceedings consistent with this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HENDON, P.J., and HILDEBRANDT, J., concur.