[Cite as *Garber v. Schneider*, 2022-Ohio-1777.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARIETTA K. GARBER, GUARDIAN OF DOROTHY LOCKSPEISER, | : | APPEAL NO. C-210568 TRIAL NO. 2020001717 |
| Petitioner-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| MICHAEL J. SCHNEIDER, | : | |
| Respondent-Appellant, | : | |
| and | : | |
| OHIO ATTORNEY GENERAL, | : | |
| Respondent. | : | |

Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 27, 2022

*Smyth & Mullin, LLC, Robert M. Smyth* and *Sybil B. Mullin*, for Petitioner-Appellee,

*Wood + Lamping LLP, Jeffrey R. Teeters* and *Steven L. Custenborder, Jr.,* for Respondent-Appellant.

**MYERS, Presiding Judge.**

{¶1}   Months after a proceeding was initiated to have a guardian appointed for 90-year-old Dorothy Lockspeiser, who suffered from dementia, and six days before the initial hearing in the guardianship proceeding, Lockspeiser executed an amendment to her revocable trust that changed her long-standing beneficiary designations to add her neighbor, respondent-appellant Michael J. Schneider, as beneficiary of 40 percent of the trust assets.

{¶2}   Soon after petitioner-appellee Marietta K. Garber was appointed Lockspeiser's guardian, she filed an action in the probate court to have the trust amendment declared void.  Garber alleged that Lockspeiser lacked the mental capacity to execute the amendment and that Schneider had unduly influenced her to execute it.  The probate court found that Lockspeiser lacked the mental capacity to execute the amendment, granted summary judgment in favor of Garber, and declared the trust amendment void.  In addition, the court sua sponte revoked the trust amendment pursuant to the court's authority under R.C. 2111.50.  Schneider now appeals.

{¶3}   We reverse the probate court's judgment because it should not have granted summary judgment where there was conflicting evidence as to Lockspeiser's mental capacity and because the court exercised its authority under R.C. 2111.50 without complying with the statute's notice and hearing requirements.

### Background Facts

{¶4}   In 2007, Schneider bought a condominium from Lockspeiser, which was down the hall from her own condominium.  Lockspeiser had inherited the condominium that she sold to Schneider from her brother's estate.  Schneider was represented by attorney David E. Nelson in connection with the purchase.

{¶5}    Twelve years later, in May 2019, Catherine Staskavich, Ph.D., evaluated Lockspeiser in response to concerns raised by Adult Protective Services. According to Dr. Staskavich's affidavit, she had been contacted by Adult Protective Services for a possible guardianship situation due to "apparent financial exploitation" of Lockspeiser by her neighbor Schneider, "to whom she had given hundreds of thousands of dollars in the last few years."  Dr. Staskavich conducted a psychological evaluation of Lockspeiser on May 6, 2019, and concluded that she was suffering from a progressive "major neurocognitive disorder," and, "[g]iven the scope of her cognitive deficits, impaired insight, and judgment," she required a guardian of her person and estate.

{¶6}    The guardianship proceeding was initiated on May 14, 2019, and the probate court issued an emergency order placing a hold on Lockspeiser's bank account and safe deposit box.  An initial guardianship hearing was scheduled for November 7, 2019.  According to Dr. Staskavich, she filed a "Statement of Expert Evaluation" with the probate court on May 14, 2019, in which she determined that Lockspeiser "was suffering from a major neurocognitive disorder--possibly Alzheimer's Disease."

{¶7}    Dr. Staskavich testified in her affidavit that she "understood that Ms. Lockspeiser was going to contest the guardianship," and that she "was prepared to testify at the November 7, 2019 hearing" regarding her opinion that Lockspeiser needed a guardian.

{¶8}    Attorney Mark Godbey represented Lockspeiser in the guardianship proceeding.  As admitted in the answer filed in this proceeding, in early June 2019, Schneider and Mark Godbey retained Jason Graff, M.D., as a medical expert, and Dr. Graff examined Lockspeiser on June 5, 2019.  Schneider drove Lockspeiser, and accompanied her to this and other appointments with Dr. Graff, his nurse practitioner,

and his staff. Dr. Graff opined that as of June 5, 2019, Lockspeiser did not need a guardian but that a power of attorney should be executed and invoked.

{¶9} On September 3, 2019, Dr. Graff conducted another examination of Lockspeiser. According to Dr. Graff's testimony in a February 2020 guardianship hearing, his opinion of Lockspeiser "changed" at the second evaluation. He testified that at the time of his second evaluation, he "could see there then that she could not make any informed judgment."

{¶10} On October 10, 2019, Schneider's attorney, David Nelson, introduced Lockspeiser to attorney John Banner. According to Nelson's affidavit, the meeting occurred in a conference room at the Madison House, and Schneider was also present.

{¶11} According to an affidavit of attorney John Banner, he explained to Lockspeiser at the October 10 meeting, "the difference between a Durable Power of Attorney and a Guardianship," and that "for a Durable Power of Attorney, as long as she is competent, she is in charge. I further advised her that if she could not make decisions for herself for whatever reason, the person she named in the Durable Power of Attorney would become the 'Attorney in Fact' and would make those decisions for her." Banner stated that Lockspeiser said "she wished to proceed with drafting a Durable Power of Attorney." According to his answer, Schneider admitted that on October 15, 2019, following the initial meeting with Banner, he and his attorney, Nelson, met with Lockspeiser and her attorney, Mark Godbey, "to discuss items."

{¶12} According to the affidavits of Nelson and Banner, they again met with both Schneider and Lockspeiser in the conference room at the Madison House on October 16, 2019. Banner stated that he "delivered" the durable power of attorney to Lockspeiser, which she signed. Banner notarized her signature, and he and Nelson signed the document as witnesses. In the document, Lockspeiser appointed her

"friend and neighbor," Carol MacGregor, as her power of attorney, "revoking all powers of attorney heretofore made by me[.]" As Schneider admitted in his answer, the document purported to revoke Lockspeiser's 2012 "Health Care Power of Attorney," which had named Garber as her agent.

{¶13} On October 22, 2019, Garber's counsel took Lockspeiser's deposition for purposes of the guardianship proceeding, before the first guardianship hearing on November 7, 2019.

{¶14} According to the affidavits of Nelson and Banner, they again met with both Schneider and Lockspeiser at the Madison House conference room on October 31, 2019. Banner stated that Lockspeiser "expressed her desire to modify" her trust. Nelson stated that Lockspeiser "discussed the changes she wanted" to her trust and "stated that she wanted to change some of the charities to share in the disposition of her [t]rust property and to include Michael Schneider in the gifting of her property from her [t]rust." Banner stated, "After our discussions, we agreed to a second meeting and scheduled that for November 1, 2019 in the conference room of the Madison House to execute [the trust amendment]."

{¶15} Nelson and Banner stated that they met with Lockspeiser the following day, November 1, 2019, that Schneider was not present, and that Lockspeiser signed the trust amendment. Although it is not entirely clear from Banner's affidavit, it appears that he represented Lockspeiser in connection with her execution of the power of attorney and the trust amendment. It appears that he drafted the power of attorney that she signed on October 16, for which she paid him in cash. However, it is unclear who drafted the trust amendment that Lockspeiser signed on November 1—Banner stated only that the trust amendment "was presented" to her that day, and his affidavit mentioned no other payments to him by Lockspeiser.

**{¶16}** On November 5, 2019, two days before the initial guardianship hearing, Schneider submitted a competing application to be appointed guardian of Lockspeiser's person. Nelson represented him as guardian applicant.

**{¶17}** At the November 7, 2019 hearing, attorney Tom Sauter represented Lockspeiser and requested a continuance. The probate court granted the continuance and scheduled the guardianship hearing for February 11, 2020.

**{¶18}** Following the February 11, 2020 hearing, the probate court appointed Garber as guardian for Lockspeiser.

### *Procedural History*

**{¶19}** On May 19, 2020, Garber filed an action in the probate court asking the court to declare void the November 1, 2019 trust amendment, as well as any estate-planning document or beneficiary designation executed by Lockspeiser between January 1, 2019, and Garber's February 2020 appointment as guardian. Garber alleged that Lockspeiser lacked the mental capacity to execute the amendment and that Schneider had unduly influenced her to execute it.

**{¶20}** Garber filed a motion for summary judgment, and Schneider filed a cross-motion for summary judgment. Following a hearing, the probate court granted summary judgment in favor of Garber upon its determination that Lockspeiser lacked the capacity to execute the trust amendment, and that as of September 2019, she also lacked the capacity to execute any other beneficiary designation or testamentary document.[1] The court declared the trust amendment void for lack of capacity. In addition, the court sua sponte exercised its authority under R.C. 2111.50, and revoked the trust amendment.

---

[1] The probate court did not address the issue of Schneider's undue influence, which was another ground upon which Garber sought the declaratory judgment.

### Summary Judgment

**{¶21}** In his first assignment of error, Schneider argues that the probate court erred by granting summary judgment to invalidate Lockspeiser's trust amendment premised upon a lack of capacity when the parties presented conflicting evidence regarding her mental capacity.

**{¶22}** We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994). "[A] trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternate reasonable inferences can be drawn." *Holloman v. Permanent Gen. Assur. Corp.*, 1st Dist. Hamilton No. C-180692, 2019-Ohio-5077, ¶ 7, quoting *Baxter v. Res. Energy Exploration Co.*, 2015-Ohio-5525, 57 N.E.3d 188, ¶ 8 (11th Dist.).

**{¶23}** The mental capacity required to create or amend a revocable trust is the same as that required to execute a will. R.C. 5806.01.[2] Courts apply the test for testamentary capacity in determining a person's capacity to execute trust documents. *See Newcomer v. Roan*, 2016-Ohio-541, 56 N.E.3d 408, ¶ 109 (6th Dist.); *Daubel v. Dineen*, 9th Dist. Lorain No. 11CA009994, 2012-Ohio-5924, ¶ 19; *Lah v. Rogers*, 125 Ohio App.3d 164, 175, 707 N.E.2d 1208 (11th Dist.1997). The test for testamentary capacity is whether the person "has sufficient mind and memory: [f]irst, to

---

[2] R.C. 5806.01 provides: "The capacity of a settlor required to create, amend, revoke, or add property to a revocable trust, or to direct the actions of the trustee of a revocable trust, is the same as that required to make a will."

understand the nature of the business in which he is engaged; [s]econd, to comprehend generally the nature and extent of his property; [t]hird, to hold in his mind the names and identity of those who have natural claims upon his bounty; [and] [f]ourth, to be able to appreciate his relation to the members of his family." *In re Estate of Flowers*, 2017-Ohio-1310, 88 N.E.3d 599, ¶ 84 (6th Dist.), quoting *Niemes v. Niemes*, 97 Ohio St. 145, 155, 119 N.E. 503 (1917), paragraph four of the syllabus. Evidence that a person had dementia is insufficient by itself to establish the person's lack of testamentary capacity; there must be evidence that dementia actually affected the person's capacity to make the testamentary disposition. *Webb v. Betty S. Anderson Children Trust*, 2020-Ohio-4975, 160 N.E.3d 804, ¶ 36 (1st Dist.), citing *Flowers* at ¶ 86, and *Stewart v. Boland*, 2015-Ohio-1712, 33 N.E.3d 551, ¶ 15 (1st Dist.).

**{¶24}** In support of her summary-judgment motion, Garber presented the affidavit of Dr. Staskavich, who determined that Lockspeiser suffered from a major progressive neurocognitive disorder. Lockspeiser scored in the "dementia range" on a cognitive assessment and in the "severely impaired range for her age" on the Dementia Rating Scale. According to the doctor, the disorder "is progressive and will require increasing levels of structure, supervision, and support."

**{¶25}** Dr. Staskavich opined that Lockspeiser "was so cognitively impaired as of May 2019, that she was susceptible to influence and was unduly influenced to amend her Trust, that she would not have amended her Trust but for that cognitive impairment." In addition, she opined that Lockspeiser "was so cognitively impaired as of May 2019, that she did not have the cognitive capacity to execute an Amendment to her Trust in November 2019."

**{¶26}** Garber also presented testimony from Dr. Graff who evaluated Lockspeiser in September 2019 and concluded that "she could not make any informed judgment. * * * [S]he can talk about her problems and she can understand concepts, but she doesn't understand how they applied to her." Dr. Graff's September 2019 evaluation occurred within two months of Lockspeiser's execution of the trust amendment on November 1, 2019.

**{¶27}** In support of their respective summary-judgment motions, both Garber and Schneider presented portions of Lockspeiser's testimony from her October 22, 2019 deposition, which occurred ten days before she executed the trust amendment. Lockspeiser testified that some of her money was at Morgan Stanley, but she forgot how much. She said she promised everyone that she would remember, and now she forgot. Then she said, "12,000," and then changed it to "12 million." In support of her assertion that Lockspeiser could not comprehend the nature and extent of her assets, Garber presented the following from Lockspeiser's deposition testimony:

Q. You said you promised everyone that you wouldn't forget how much money you had at Morgan Stanley. Who did you promise?

A. Who did I promise?

Q. Yeah. You said a minute ago when you were trying to struggle with the number.

A. Oh, yeah. Well, that was Mike, the guy that lives next door to me, the guy that drives me.

Q. Yeah. Why did you make Mike that promise? I don't want you to feel bad about something you don't - -

A. Because he was trying to help me remember, and he gave me a couple tactics on how to remember the $12 million. I couldn't remember it.

Q. Yeah. Did he teach you some tactics on how to remember that?

A. No. He just kept repeating it.

Q. Oh.

A. He wouldn't let me forget it.

**{¶28}** In support of his summary-judgment motion, Schneider presented excerpts from Lockspeiser's deposition that showed her intelligence, generosity, and fondness for him. He pointed to portions in which she testified about her childhood, her parents, and her brother. He notes that when Lockspeiser testified about the $12 million she had invested with Morgan Stanley, she said:

See, when I was playing the stock market, I didn't care about the money.
I just loved, you know, learning about the different companies and how
they worked, and I had a great time with them and it was - - and it
worked up to 12 million.

A review of Lockspeiser's deposition shows that at times, she was able to answer the questions accurately, while at other times, she was very confused.

**{¶29}** Schneider also presented the affidavits of attorneys Nelson and Banner in support of his motion. Nelson's affidavit stated that when Lockspeiser signed the power of attorney on October 16, 2019, naming Carol MacGregor as power of attorney, "to the best of my knowledge[,] Dorothy Lockspeiser knew the document she was signing." He said, "She knew whom she was naming as the Power of Attorney and that she was of sound mind and she was not under any undue influence at that time."

**{¶30}** Nelson further stated in his affidavit that in his four meetings with Lockspeiser in October and November 2019, she "came to every meeting at the Madison House by herself." He said that she was "always on time," and that she "was well dressed, her clothes were clean, and there were no stains on her clothes such as

food or coffee." He stated that on November 1, 2019, when Lockspeiser executed the trust amendment:

> I believe [she] knew that she was very wealthy and the extent of her wealth. * * * I believe [she] knew she had no relatives or certainly no close relatives. I believe she knew the institutions and persons in her life who were significant to her and she knew to whom she was leaving gifts to [sic] in her Trust. * * * I believe that on November 1, 2019, [she] was of sound mind and had the mental capacity to execute [the trust amendment].

**{¶31}** In Banner's affidavit, he mentioned that in his meetings with Lockspeiser on October 10, October 31, and November 1, 2019, Lockspeiser arrived alone and on time. He said that she was "clean, well dressed and not disheveled." He stated that on October 31, Lockspeiser "appeared in control, in command and expressed her desire to modify her Trust Agreement." Banner stated that when the trust amendment was presented to Lockspeiser on November 1, she "took time and looked over the [trust amendment] as presented to her with the changes," she "did not express any discontent with those changes, and she signed the document[.]" Banner stated, "Every time that I met with Dorothy Lockspeiser, she was extremely cordial, was in command and in control." Banner said:

> As a duly licensed attorney in the state of Ohio who has practiced for 40 years, had I believed that Dorothy Lockspeiser did not have the capacity to execute the documents as required by law, I would never have allowed her to sign them.
>
> I believe that on November 1, 2019, Dorothy Lockspeiser was of sound mind and had the mental capacity to execute [the trust amendment].

{¶32} In its judgment entry, the probate court referred to the averments by Nelson and Banner as to their belief that Lockspeiser was of sound mind and had the capacity to execute the trust amendment. The court noted that in support of their opinions, "their affidavits both state that Ms. Lockspeiser arrived at their meetings alone." But the court found "this wholly unpersuasive," noting that their four meetings had taken place in Lockspeiser's residence and that Schneider had been present for all but one of the meetings. In addition, the court discounted the attorneys' reliance "on the fact that Ms. Lockspeiser was clean and appropriately groomed when she arrived," because Dr. Staskavich had made the same observations—the court noted, "Despite these observational findings, Dr. Staskavich found that Ms. Lockspeiser was severely impaired."

{¶33} The probate court noted that Nelson had represented Schneider in the guardianship proceedings, and that in the deposition Lockspeiser had given in those proceedings, "she stated that she did not have children, but she had a large family on the coast." Consequently, the court discounted Nelson's statements in his affidavit that Lockspeiser had "no relatives or certainly no close relatives" and that she "never mentioned blood relatives."

{¶34} The court found that the two medical professionals agreed that, "at the latest, as of September 2019, Dorothy Lockspeiser's neurocognitive impairment had progressed to the point that she lacked the cognitive ability to make financial decisions." The court noted that Lockspeiser's deposition, given ten days before she executed the trust amendment, showed that she could not independently recall the amount of money she had at a financial institution and "was being incessantly coached in that regard by Michael Schneider."

**{¶35}** The court found the circumstances surrounding Lockspeiser's execution of the trust amendment "suspicious," noting that Schneider's attorney had introduced Lockspeiser to Banner; that Schneider and his attorney attended the meetings with Lockspeiser and Banner; that Schneider communicated by email directly with Banner; that the trust amendment "was drafted and signed within one day;" and that "[t]his all took place mere days prior to the scheduled guardianship hearing."

**{¶36}** The court found that no genuine issue for trial remained and that reasonable minds could only conclude that Lockspeiser lacked the capacity to execute the trust amendment, noting, "perhaps most significantly, [Lockspeiser] could not hold in her mind the extent of her assets."

**{¶37}** In sum, Garber presented evidence from two doctors who opined that Lockspeiser lacked the requisite mental capacity to execute the trust amendment, and Schneider presented evidence from two attorneys who opined that Lockspeiser possessed the requisite mental capacity to execute the amendment. As this court has previously stated, "[t]his case presents a classic example of what cannot be resolved by summary judgment: namely, two different versions of a story, with the outcome dependent on credibility." *Green v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741, 908 N.E.2d 975, ¶ 24 (1st Dist.), quoting *Wygant v. Continental Ins. Agency*, 1st Dist. Hamilton No. C-980012, 1999 Ohio App. LEXIS 108, *5 (Jan. 22, 1999) ("When this happens, as it often does, we have repeatedly advised our trial courts to proceed with a trial, as this kind of case simply cannot be determined by summary judgment, no matter how implausible one story may seem."). Because the parties presented conflicting evidence from which alternate reasonable conclusions could be drawn on the issue of Lockspeiser's lack of capacity, the probate court erred in granting

summary judgment to invalidate the trust amendment premised upon her lack of capacity. We sustain the first assignment of error.

### Revocation pursuant to R.C. 2111.50

{¶38} In his second assignment of error, Schneider argues that the probate court erred in ordering the revocation of Lockspeiser's trust amendment pursuant to R.C. 2111.50(B)(4), without providing the statutorily required prior notice of its action or establishing that such revocation was in the settlor's best interest. A probate court's decisions involving guardianships will not be reversed on appeal absent an abuse of discretion. *In re Guardianship of Gelsinger*, 8th Dist. Cuyahoga No. 108479, 2019-Ohio-4584, ¶ 18, citing *In re Guardianship of Bakhtiar*, 9th Dist. Lorain No. 16011029, 2017-Ohio-8617, ¶ 8.

{¶39} "The general grant of jurisdiction to probate courts regarding guardians and their wards is comprehensive." *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 46. Because the probate court is the "superior guardian," other guardians must obey all probate court orders. *Id.* at ¶ 52, citing R.C. 2111.50(A)(1) ("At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships.").

{¶40} R.C. 2111.50(B) provides in relevant part:

In connection with any person whom the probate court has found to be an incompetent or a minor subject to guardianship and for whom the court has appointed a guardian, the court has, *subject to divisions (C) to (E) of this section*, all the powers that relate to the person and estate of the ward and that the ward could exercise if present and not a minor

14

or under a disability, except the power to make or revoke a will. These powers include, but are not limited to, the power to:

\* \* \*

(4) Create, amend, or revoke revocable trusts of property of the estate of the ward that may extend beyond the minority, disability, or life of the ward[.]

(Emphasis added.)

**{¶41}** The statute makes clear that the probate court's exercise of its powers under division (B) is subject to divisions (C) and (E). As relevant here, R.C. 2111.50(C) requires that the court's authority be exercised "in the best interest" of the ward. R.C. 2111.50(E)(1) requires that, "prior to its exercise" of its power under division (B)(4) to "create, amend, or revoke a revocable trust," the probate court "shall cause notice as described in division (E)(2) of this section to be given and a hearing to be conducted." Division (E)(2) provides that notice shall be given to, among others, the beneficiaries under a revocable trust of the ward and the beneficiaries under any proposed revocable trust. R.C. 2111.50(E)(2)(d)(ii) and (iv).

**{¶42}** Even though we could glean from the probate court's entry that it purported to exercise its power to revoke the trust amendment in its ward's best interest, so as to satisfy R.C. 2111.50(C), the statute makes clear that notice and a hearing are required before the exercise of that power. However, the record does not demonstrate that the probate court provided the statutorily required notice or hearing prior to revoking the trust amendment, as required by R.C. 2111.50(E)(1) or (2). While the statute does not indicate whether the hearing required in division (E)(1) must be an evidentiary hearing, we cannot say that the court's hearing on the competing summary-judgment motions appropriately satisfied the requirement. Had Schneider

been provided the statutorily required notice, he may have chosen to rely on different evidence or arguments to convince the probate court not to exercise its power to revoke the trust amendment.

**{¶43}** Consequently, we hold that the probate court abused its discretion by sua sponte exercising its power under R.C. 2111.50(B)(4) to revoke the trust amendment without complying with the notice and hearing requirements under R.C. 2111.50(E). We sustain the second assignment of error.

## *Conclusion*

**{¶44}** Therefore, the judgment of the probate court is reversed, and the case is remanded for further proceedings consistent with the law and this opinion.[3]

Judgment reversed and cause remanded.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.

---

[3] Respondent-appellant acknowledged at oral argument that no jury demand had been filed, and that the matter should be remanded to the probate court for a bench trial.