SNOWDEN, Appellee,

v.

HASTINGS MUTUAL INSURANCE COMPANY, Appellant.

[Cite as *Snowden v. Hastings Mut. Ins. Co.*, 177 Ohio App.3d 209, 2008-Ohio-1540.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 06 MA 138.

Decided March 17, 2008.

Philip Vigorito and C. Douglas Ames, for appellee.

Gary Hermann, for appellant.

VUKOVICH, Judge.

{¶ 1} Defendant-appellant, Hastings Mutual Insurance Company, appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of plaintiff-appellee, David Snowden. The trial court found that Hastings had a duty to defend David Snowden in Mahoning County Common Pleas case No. 03CV1774, *Fares v. Snowden* et al. The threshold issue before us is whether an insurance policy that contains an exclusion stating that "Personal Liability and Medical Payments to Others do not apply to 'bodily injury' or 'property damage' which *may reasonably be expected* to result from the intentional or criminal acts of an 'insured'" is subject to the self-defense exception set forth by the Ohio Supreme Court's decision in *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 23 OBR 208, 491 N.E.2d 688. *Thompson* held, "When an insured admits that he intentionally injured a third party and the surrounding circumstances indicate that he acted in self-defense in causing the injury, the insured's insurance company may not refuse to defend the insured from the third party's intentional tort claim on the grounds that the third party's injuries fall within an exclusion from coverage for 'bodily injury * * * which is either expected or intended from the standpoint of the [i]nsured.'" Id. at 82, 23 OBR 208, 491 N.E.2d 688. We find that that decision is applicable to the case at hand, and thus the judgment of the trial court is hereby affirmed.

## STATEMENT OF FACTS

{¶ 2} In 2002, an altercation occurred between Thomas Fares and David Snowden on Snowden's property. Allegedly Snowden slapped or shoved Fares; Fares punched Snowden; and Snowden then tackled Fares. Fares allegedly was

injured from this altercation. As a result, he filed a civil complaint in the Mahoning County Common Pleas Court for intentional tort; the case was captioned *Fares v. Snowden* and assigned case No. 03CV1774.

{¶ 3} Snowden sought to have Hastings, his insurance company, defend him in the action. He believed that Hastings should defend the action because he asserted that he acted in self-defense. Hastings informed Snowden that it would not defend him. It believed that under the policy language there was no duty to defend. Snowden then asked Hastings to reconsider its determination. Hastings once against informed Snowden that it believed it was under no duty to defend.

{¶ 4} Consequently, Snowden initiated the case before us by filing a declaratory judgment action in the Mahoning County Common Pleas Court requesting the court to hold that Hastings has a duty to defend. That case was assigned trial court case No. 05CV2310.

{¶ 5} Summary judgment motions and responses were filed by each party. Snowden also filed a motion for sanctions based upon alleged discovery violations, and he also sought a monetary award for Hastings's alleged bad faith in declining coverage.

{¶ 6} The trial court granted summary judgment for Snowden and denied Hastings's motion for summary judgment. It found that based upon *Thompson*, 23 Ohio St.3d 78, 23 OBR 208, 491 N.E.2d 688, Hastings had a duty to defend. It denied Snowden's motion for sanctions and held the bad faith issue in abeyance pending appeal. Hastings appeals the trial court's grant of summary judgment.

{¶ 7} In the midst of the all the above, *Fares v. Snowden*, case No. 03CV1774, has proceeded. However, it has not yet gone to trial. By motion of Snowden, the trial court stayed the trial pending the outcome of this appeal.

## ASSIGNMENT OF ERROR

{¶ 8} "The lower court erred in finding that the defendant-appellant owed the plaintiffs-appellees a duty to defend under the terms of the homeowners insurance policy."

{¶ 9} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole v. Am. Indus. & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377.

{¶ 10} To determine when the duty to defend arises, one must look to the allegations in the complaint and the insurance policy to ascertain whether the insured's actions were within the coverage of the policy. *Thompson,* 23 Ohio St.3d at 80, 23 OBR 208, 491 N.E.2d 688, citing *Motorists Mut. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus. See also *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555.

{¶ 11} The complaint filed in *Fares v. Snowden,* case No. 03CV1774 (Fares's complaint), asserted two claims. The first claim was an intentional-tort battery claim—that Snowden intended to harmfully and offensively touch Fares. The second claim was a negligence claim—that Snowden had a duty to refrain from causing injury or damage to Fares. These claims were based upon Snowden's alleged conduct of knocking Fares to the ground and hitting him.

{¶ 12} Snowden's insurance policy with Hastings provides personal liability coverage if a claim is made "against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." "Occurrence" is defined as "an accident * * * which results, during the policy period, in 'bodily injury' or 'property damage.'" However, the policy provides an exclusion for personal liability and medical payments to others. The exclusion states that personal liability and medical payments do not apply to " 'bodily injury' or 'property damage' which may reasonably be expected to result from the intentional or criminal acts of an 'insured' or which is in fact intended by the 'insured.'" This type of exclusion is commonly referred to as an intentional-acts exclusion.

{¶ 13} Even though Fares's complaint characterizes Snowden's action as both negligent and intentional, given the facts, Snowden's actions of slapping or shoving were clearly not negligent, but rather intentional. The mere insinuation of negligence in a civil complaint cannot transform what are essentially intentional torts into something accidental that might be covered by insurance. *Bailey v. Bevilacqua,* 158 Ohio App.3d 382, 2004-Ohio-4392, 815 N.E.2d 1136, ¶ 29, citing *State Auto Ins. Cos. v. Manning* (Aug. 29, 1997), 11th Dist. No. 96–G–2000, 1997 WL 531234.

{¶ 14} Thus, the actions, being intentional, would generally be excluded from coverage under Snowden's policy. However, in Snowden's answer to the complaint, he asserted the affirmative defense of self-defense.[1] The Ohio Su-

---

1. Self-defense in an intentional-tort action is an affirmative defense that a defendant must plead and prove by a preponderance of the evidence. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099. The elements of self-defense where the defendant is alleged to have used only nondeadly force are that (1) the defendant was not at fault in creating the

preme Court has created an exception to the general rule that an insurer is not obligated to defend or indemnify an insured for injures resulting from the insured's intentional acts in those situations when an insured acts in self-defense. *Thompson,* 23 Ohio St.3d 78, 23 OBR 208, 491 N.E.2d 688; *Bailey,* 158 Ohio App.3d 382, 2004-Ohio-4392, 815 N.E.2d 1136, ¶ 30. Thus, if the *Thompson* holding is applicable, Snowden's actions might be covered and Hasting has a duty to defend.

{¶ 15} The facts in *Thompson* are as follows. Thompson sued Sabo, alleging that Sabo had negligently or intentionally caused bodily injury to Thompson. Sabo requested that his insurance company, Preferred Mutual Insurance, provide him a defense to the claims. Preferred denied the request and brought a declaratory judgment action against Sabo seeking a judgment declaring that Preferred had no duty to either defend Sabo against Thompson's claims or to provide Sabo with liability coverage for any verdict rendered on the claims.

{¶ 16} The trial court found that based upon the evidence, Sabo was the owner and landlord of a mobile home park where he was residing. The court found that Sabo had been awakened by Thompson throwing rocks at Sabo's house trailer. Sabo tried to quiet the disturbance; he picked up a gun and went outside to confront Thompson. An altercation ensued, and Thompson allegedly pulled Sabo off the steps of his trailer, breaking Sabo's leg. Sabo then fired a warning shot into the air; and when Thompson continued to move toward him, he fired a second shot that struck and injured Thompson.

{¶ 17} The trial court concluded that Sabo had intentionally shot Thompson but that it was possibly in self-defense. The court then stated that although "shooting in self-defense is an intentional act, it is not an intentional tort so as to deny coverage under the insurance policy." The court of appeals affirmed the trial court's decision.

{¶ 18} The Ohio Supreme Court also concluded that Preferred was required to provide a defense for Sabo. Preferred argued that while Sabo's shooting of Thompson may have been in self-defense, the exclusion for "expected or intended" injury would still not allow the act to fall within its coverage because there was no distinction drawn under the expected-injury exclusion between injuries caused by persons acting wrongfully and those acting under a claim of self-defense. In addressing this argument and in finding that Preferred had a duty to defend, the Supreme Court stated the following:

---

situation giving rise to the affray and (2) the defendant, even if mistaken, had a bona fide belief that he was in imminent danger of any bodily harm. *State v. Morris,* 7th Dist. No. 03MO12, 2004-Ohio-6810, 2004 WL 2913956, ¶ 22, citing *State v. Thomas* (1997), 77 Ohio St.3d 323, 330, 673 N.E.2d 1339.

{¶ 19} "While a facial analysis of the exclusion in question may support Preferred's contention, we find that neither the purpose behind the exclusion nor public policy is served by application of the exclusion to an insured who claims to have acted in self-defense.

{¶ 20} "Generally, an individual may not purchase liability insurance coverage against a claim arising from his intentional infliction of injury upon the person or property of another. *Commonwealth Cas. Co. v. Headers* (1928), 118 Ohio St. 429, 161 N.E. 278; cf. *Kish v. Central Natl. Ins. Group* (1981), 67 Ohio St.2d 41 [21 O.O.3d 26, 424 N.E.2d 288]. Allowing the purchase of such coverage would remove an important disincentive to the commission of intentional torts—the resultant threat, through civil damage claims, to the tortfeasor's personal assets. No purpose is served, however, by denying coverage to an insured who, while acting in self-defense, intentionally injures another. The insured who acts in self-defense does so only as a reaction to his attacker, and any injuries suffered by the attacker are not the result of the insured's misconduct.

{¶ 21} "From the standpoint of an insurance company, an 'expected or intended injury' exclusion prevents individuals from purchasing insurance as a shield for their anticipated intentional misconduct. Without such an exclusion, an insurance company's risk would be incalculable. An act of self-defense, however, is neither anticipated nor wrongful from the standpoint of the insured. The risk that an insurance company bears in providing an intentional tort defense for an insured who claims to have acted in self-defense is calculable and, from a monetary standpoint, minimal.

{¶ 22} " * * * When an insured admits that he intentionally injured a third party and the surrounding circumstances indicate that he acted in self-defense in causing the injury, the insured's insurance company may not refuse to defend the insured from the third party's intentional tort claim on the grounds that the third party's injuries fall within an exclusion from coverage for 'bodily injury * * * which is either expected or intended from the standpoint of the [i]nsured.' " *Thompson*, 23 Ohio St.3d at 81–82, 23 OBR 208, 491 N.E.2d 688.

{¶ 23} Hastings argues that *Thompson* is not applicable, because the language in the insurance policy at issue in that case is different from the policy language at issue in this case. The policy exclusion language in *Thompson* stated that coverage was precluded for "bodily injury * * * which is either expected or intended from the standpoint of the [i]nsured." The exclusion language in the instant case is coverage is precluded for " 'bodily injury' * * * which may reasonably be expected to result from the intentional or criminal acts of an 'insured' or which is in fact intended by an 'insured.' " Hastings insists that the use of the phrase "reasonably be expected to result from the intentional or criminal acts of an insured" removes the insurance company's duty to provide a

defense when self-defense is asserted. It reasons that the *Thompson* exclusion depends upon what was expected or intended from the standpoint of the insured. However, the exclusion in the Hastings policy merely looks to "what could be *reasonably* expected from the intentional act itself and not from *what the insured expected.*" Thus, the language in Preferred's exclusion was a subjective test, while the language in Hastings's exclusion is an objective test.

{¶ 24} It appears that no case in Ohio has dealt with the issue of whether there is a duty to defend an insured's claim of acting in self-defense when the policy excludes damages that may "reasonably be expected." Hastings, however, cites a federal case, *Scott v. Allstate Indemn. Co.* (N.D.Ohio 2006), 417 F.Supp.2d 929, that has dealt with the objective standard.

{¶ 25} In *Scott,* the Scotts' house was damaged in a fire. They owned a homeowner's insurance policy from Allstate and thus sought coverage for the fire damage from Allstate. Allstate commenced an investigation of the fire. During this investigation, Scott indicated that he had noticed a "wet spot" on the floor of his garage and in order to investigate it he lit a match and applied it to the wet spot. The wet spot ignited and Scott tried unsuccessfully to prevent the spread of fire.

{¶ 26} Allstate denied payment and liability for the Scotts' claim. It claimed that the fire damage was not accidental, because Scott admitted that the fire resulted from his intentional act; i.e., he deliberately applied the match to the unidentified liquid. Furthermore, the policy contained an exclusion that precluded coverage for "intentional or criminal acts of or at the direction of any insured person, if the loss that occurs may be reasonably expected to result from such acts." Thus, Allstate claimed that the property loss was excluded under the insurance contract because the fire damage was reasonably expected to result from Scott's acts.

{¶ 27} The district court first went through the analysis of whether the fire was an accident. The court concluded that it was not and that it was an intentional act. It then addressed the reasonable-expectation exclusion. "Therefore, not only is [the Scotts'] loss not accidental—meaning unexpected or unforeseen, but it also is expressly excluded under the Insurance Contract because it was reasonably expected to occur." Id. at 935. The opinion further explains:

{¶ 28} "The phrase 'which may reasonably be expected to result' denotes an objective as opposed to subjective standard of coverage rendering an insured's subjective intent to cause damage irrelevant. A reasonable person knows that a fire 'may be reasonably expected' to spread and cause extensive damage. Derrick Scott's act of striking a match to a wet substance that started a fire was deliberate. It is irrelevant that he only intended to test whether a substance is flammable. He expected the possibility of causing a fire, he exposed his property

to a direct risk of harm, and it may be reasonably expected that fire damage can result from such actions." Id. at 935–936.

{¶ 29} The above analysis does clearly indicate that the phrase "reasonably * * * expected" creates an objective standard, rather than a subjective standard. However, the facts of the *Scott* case do not involve a claim of self-defense. Thus, it is distinguishable and not extremely helpful for our purposes.

{¶ 30} After reviewing all the above, we find that *Thompson* is applicable and the trial court's reliance on it was not erroneous. We find so for multiple reasons. First, as Snowden suggests, the *Thompson* holding explained that there is a public policy concerning the inapplicability of an intentional-acts exclusion to a claim of self-defense. As the *Thompson* court clearly indicated when analyzing Preferred's argument that the exclusion applied to self-defense claims, "While a facial analysis of the exclusion in question may support Preferred's contention, we find that neither the purpose behind the exclusion nor public policy is served by application of the exclusion to an insured who claims to have acted in self-defense." *Thompson*, 23 Ohio St.3d at 81, 23 OBR 208, 491 N.E.2d 688. An "insured who acts in self-defense does so only as a *reaction* to his attacker, and any injuries suffered by the attacker are not the result of the insured's misconduct." Id.

{¶ 31} Additionally, while the language of the exclusions may be different, the purpose behind them is the same. The purpose behind intentional-act exclusions is to "prevent[ ] individuals from purchasing insurance as a shield for their anticipated intentional misconduct." (Emphasis omitted.) Id. If a person was permitted to shield his liability for intentional torts by purchasing insurance, there would no longer be a disincentive to the commission of intentional torts or the threat of a successful intentional-tort suit. However, no purpose is served by denying coverage to an insured who is legally free of misconduct when he injures another pursuant to the self-defense doctrine. Furthermore, "the risk that an insurance company bears in providing an intentional tort defense for an insured who claims to have acted in self-defense is calculable and, from a monetary standpoint, minimal." Id.

{¶ 32} Last, the above analysis indicates that the Supreme Court did not rely solely on the language of the exclusion when coming to its determination in *Thompson*. Part of its reasoning was based on public policy and the purpose of intentional-acts exclusions. Granted, the syllabus of the court clearly refers to the language of the policy and indicates that when the policy uses that language, the insurer cannot deny coverage when the surrounding circumstances indicate that the insured acted in self-defense. However, the sound logic and reasoning that led to the court's holding does not diminish because an insurer uses an

objective standard instead of a subjective standard. Those standards determine noninsurable misconduct that are not applicable to a self-defense situation.

{¶ 33} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

DeGenaro, P.J., and Donofrio, J., concur.