JTO, INC., Appellant,

v.

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellee.

[Cite as *JTO, Inc. v. State Auto Mut. Ins. Co.*, 194 Ohio App.3d 319, 2011-Ohio-1452.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2010–L–062.

Decided March 25, 2011.

Dworken & Bernstein Co., L.P.A., Richard N. Selby II, and Keith R. Kraus, for appellant.

Glowacki & Associates Co., L.P.A., James L. Glowacki, and Christopher M. Corrigan, for appellee.

---

MARY JANE TRAPP, Judge.

{¶ 1} JTO, Inc., a construction company, appeals from a judgment of the Lake County Court of Common Pleas. The court dismissed its complaint seeking a declaration that State Automobile Mutual Insurance Company ("State Auto") has a duty to indemnify and defend JTO in a lawsuit relating to a hotel constructed by JTO. The damage to the hotel was brought about by water infiltration, which was caused by defects in the construction of the hotel building. For the following reasons, we reverse the judgment of the trial court and remand.

{¶ 2} **Substantive Facts and Procedural History**

{¶ 3} JTO, a general contractor, entered into a contract with a hotel company to construct a Marriott Residence Inn in Mentor, Ohio. JTO subcontracted portions of the construction to Farizel Construction Company. Farizel purchased a commercial general-liability policy from State Auto, naming JTO as an additional insured on the policy.

{¶ 4} In 2000, construction of the hotel was completed. However, the hotel experienced a water-infiltration problem shortly after opening for business. The

hotel company notified JTO and requested that the problem be remedied. JTO failed to do so. In 2007, the hotel company had repairs made to correct the water-infiltration problem, at a cost of $609,000.

{¶ 5} In 2008, the hotel company filed a suit against JTO, claiming breach of contract, breach of warranty of workmanlike performance, and breach of express warranty. The hotel's complaint alleged that shortly after opening, the hotel "began to experience water infiltration in numerous places throughout the structure, including in entrance ways and guest rooms, resulting in damages to walls and ceilings." It sought damages in the amount of $609,000, the cost of repairing the damage caused by the water infiltration.

{¶ 6} JTO brought a third-party action against Farizel. It also requested State Auto to provide a defense. State Auto denied coverage and refused to defend JTO in the lawsuit.

{¶ 7} JTO then filed the instant action, claiming breach of contract and breach of fiduciary duty. It sought a judgment declaring that State Auto is obligated to indemnify and defend JTO, as well as compensatory and punitive damages. In response, State Auto filed a counterclaim seeking declaratory relief on issues of coverage and defense.

{¶ 8} State Auto then moved for judgment on the pleadings pursuant to Civ.R. 12(C). The trial court granted the motion and dismissed JTO's complaint, declaring that State Auto does not have a duty to defend or indemnify JTO. JTO now appeals, raising the following assignment of error:

{¶ 9} "The trial court erred in granting State Auto's Motion for Judgment on the Pleadings."

{¶ 10} **Standard of Review**

{¶ 11} "Because Civ.R. 12(C) motions test the legal basis for the claims asserted in a complaint, our standard of review is de novo. In ruling on the motion, a court is permitted to consider both the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings. In so doing, the court must construe the material allegations in the complaint, with all reasonable inferences drawn therefrom, as true and in favor of the non-moving party. A court granting the motion must find that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." (Citations omitted.) *Frazier v. Kent,* 11th Dist. Nos. 2004–P–0077 and 2004–P–0096, 2005-Ohio-5413, 2005 WL 2542940, ¶ 14.

{¶ 12} The appellate court reviews de novo the granting or denial of a motion for judgment on the pleadings. *Westwinds Dev. Corp. v. Outcalt,* 11th Dist. No. 2008–G–2863, 2009-Ohio-2948, 2009 WL 1741978, ¶ 23, citing *Euvrard v. Christ Hosp. & Health Alliance* (2001), 141 Ohio App.3d 572, 575, 752 N.E.2d 326.

{¶ 13} **Issue**

{¶ 14} The parties do not dispute that State Auto has no obligation to provide JTO with defense or indemnification regarding the defective construction that allegedly caused the water infiltration. The only issue is whether the damage to the property caused by the water infiltration is covered under the policy.

{¶ 15} JTO argues that it is entitled to coverage for the damage caused by the water infiltration because the water infiltration was an "occurrence." State Auto maintains that it has no duty to defend or indemnify JTO because the alleged damage to the hotel ultimately resulted from the defect in the hotel's construction, not from an "occurrence" as defined in the policy.

{¶ 16} **Analysis**

{¶ 17} "To determine when the duty to defend arises, one must look to the allegations in the complaint and the insurance policy to ascertain whether the insured's actions were within the coverage of the policy." *Snowden v. Hastings Mut. Ins. Co.*, 177 Ohio App.3d 209, 2008-Ohio-1540, 894 N.E.2d 336, ¶ 10, citing *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 491 N.E.2d 688.

{¶ 18} "The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." (Citations omitted.) *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19.

{¶ 19} Section I, paragraph 1 of the subject policy provides:

{¶ 20} "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. * * *

{¶ 21} "b. This insurance applies to 'bodily injury' and 'property damage' only if:

{¶ 22} "(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

{¶ 23} "(2) The 'bodily injury' or 'property damage' occurs during the policy period."

{¶ 24} The term "property damage" is defined in section V, paragraph 17 as:

{¶ 25} "(a) Physical injury, to tangible property, including all resulting loss of use of that property. * * * "

{¶ 26} The term "occurrence" is defined in section V, paragraph 13 as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

{¶ 27} Like most commercial general-liability policies, the commercial general-liability policy at issue provides insurance coverage only for property damage caused by an "occurrence," defined as an "accident." Thus, in order to be covered under the policy, the water filtration that caused the damage to the hotel must be an "accident." The policy does not define "accident."

{¶ 28} "While the policy does not define the term accident, it shall be given its ordinary meaning." *Westfield Cos. v. Gibbs,* 11th Dist. No. 2004–L–058, 2005-Ohio-4210, 2005 WL 1940305, ¶ 16. In *Gibbs,* this court provided the following ordinary meaning of an "accident":

{¶ 29} " 'An "accident" is an event proceeding from an unexpected happening or unknown cause without design and not in the usual course of things; an event that takes place without one's expectation; an undesigned, sudden and unexpected event; an event which proceeds from an unknown cause or is an unusual effect of a known cause and, therefore, unexpected.' " (Citations omitted.) Id. at ¶ 17.

{¶ 30} JTO concedes that the construction defects, which caused the water-infiltration problem, are not covered under the policy. It maintains, however, that the damage to the hotel building caused by the water infiltration is covered, because the water infiltration qualifies as an "occurrence."

{¶ 31} Regarding the issue of whether consequential damages stemming from faulty workmanship are caused by an "occurrence," the Second District, in *Indiana Ins. Co. v. Alloyd Insulation Co.,* 2d Dist. No. 18979, 2002-Ohio-3916, 2002 WL 1770491, set forth the following analysis:

{¶ 32} " 'Insurance coverage is bottomed on the concept of fortuity. Applying this rule in the construction context, truly accidental property damage generally is covered because such claims and risks fit within the statistical abstract. Conversely, faulty workmanship claims generally are not covered, except for their consequential damages, because they are not fortuitous. In short, contractors' "business risks" are not covered by insurance, but derivative damages are. *The key issues are whether the contractor controlled the process leading to the damages and whether the damages were anticipated.*

{¶ 33} " 'Coverage analysis largely turns on the damages sought. If the damages are for the insured's own work, there is generally no coverage. If the damages are consequential and derive from the work the insured performed, coverage generally will lie. The underwriting intent is to exclude coverage for the contractor's business risks, but provide coverage for unanticipated consequential damages.' " (Emphasis added and citations omitted.) Id. at ¶ 27–28, quoting

Franco, Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies (1994), 30 Tort and Ins.L.J. 785, 785–787.

{¶ 34} In *Alloyd,* the plaintiff/property owner alleged that the defective construction of a roof caused corrosion and other damage to the property. The Second District concluded that the corrosion and related damage, as consequential damages, constituted an "occurrence" under the terms of the policy, because they were "an accident, including continuous exposure, or repeated exposure to substantially the same general harmful conditions." Id., 2002-Ohio-3916, 2002 WL 1770491, at ¶ 31. See also *Dublin Bldg. Sys. v. Selective Ins. Co. of Am.,* 172 Ohio App.3d 196, 2007-Ohio-494, 874 N.E.2d 788 (the court concluded that damage by mold caused by a failure to seal the exterior joints of the buildings was covered under the commercial general-liability insurance policy). Although we are aware of the contrary authorities on this issue,[1] we find the reasoning of the Second District persuasive.

{¶ 35} In this case, the hotel company alleged in its complaint that shortly after opening, the hotel "began to experience water infiltration in numerous places throughout the structure, including in entrance ways and guest rooms, resulting in damages to walls and ceilings." The applicable analysis for whether coverage exists is whether " 'the contractor controlled the process leading to the damages and whether the damages were anticipated.' " *Alloyd,* 2002-Ohio-3916, 2002 WL 1770491, at ¶ 27, quoting Franco, Insurance Coverage for Faulty Workmanship Claims under Commercial General Liability Policies (1994), 30 Tort & Ins.L.J. 785. Under an appropriate set of facts, the water infiltration *can* be an "occurrence," i.e., "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Therefore, construing in its favor the material allegations in its complaint, with all reasonable inferences drawn therefrom, we cannot say that JTO can prove no set of facts that would entitle it to relief.

{¶ 36} Therefore, the trial court erred in granting State Auto's motion for judgment on the pleadings and dismissing JTO's complaint. The assignment of error is sustained.

{¶ 37} The judgment of the Lake County Court of Common Pleas is reversed, and the cause is remanded.

Judgment reversed
and cause remanded.

GRENDELL and RICE, JJ., concur.

---

1. Cf. *Bogner Constr. Co. v. Field & Assoc.,* 5th Dist. No. 08 CA 11, 2009-Ohio-116, 2009 WL 91300 (there was no "occurrence" when a building was damaged by a leaking roof that had been defectively constructed).