[Cite as *Chiquita Brands Internatl., Inc. v. Fed. Ins. Co.*, 2013-Ohio-759.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHIQUITA BRANDS INTERNATIONAL, INC., | : | APPEAL NO. C-120019 TRIAL NO. A-0808934 |
| | : | |
| Plaintiff-Appellee, | | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | : | |
| | : | |
| Third-Party Defendant- Appellant, | : | |
| | | |
| and | : | |
| | | |
| FEDERAL INSURANCE COMPANY, et al., | : | |
| | : | |
| Defendants/Third-Party Plaintiffs. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  March 6, 2013

*Jacobs, Kleinman, Seibel & McNally* and *Kenneth F. Seibel*, and *Covington & Burling, LLP*, and *William P. Skinner*, for Plaintiff-Appellee,

*Bates Carey Nicolaides LLP*, *Richard H. Nicolaides, Jr.*, *Barbara L. Michaelides*, *Agelo L. Reppas*, and *Reminger* and *Joseph W. Borchelt*, for Third-Party Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}    Plaintiff-appellee Chiquita Brands International, Inc. ("Chiquita"), filed a declaratory judgment action against defendants/third-party plaintiffs, Federal Insurance Company, American Motorists Insurance Company, and Lumbermens Mutual Casualty Company.  In its complaint, Chiquita asked the trial court to declare that the insurance companies had a duty to defend Chiquita in numerous tort claims that had been filed against it.  Those claims alleged that from 1989 through 2004, Chiquita had illegally financed terrorist groups in Columbia, and that the plaintiffs in those suits had suffered damage as a result of the terrorists' operations.  Chiquita also contended that the insurance companies had breached the insurance contracts for failing to provide defenses and coverage in the underlying tort actions.

{¶2}    Federal, American Motorists and Lumbermens Mutual filed a third-party complaint against third-party defendant-appellant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), which had insured Chiquita under a series of one-year policies from July 1992 to July 2000.  They asked the court to declare that National Union had a duty to defend Chiquita in the underlying tort actions, and that, to the extent the court might find that they had a duty to defendant Chiquita, they were entitled to contribution and indemnity from National Union.

{¶3}    National Union then asserted a direct claim against Chiquita, asking the court to declare that it did not have a duty to defend or indemnify Chiquita in the underlying suits, and that if it did, it was entitled to contribution from the other three

insurance companies. Chiquita then filed a counterclaim against National Union, alleging that it, too, had a duty to defend Chiquita in the underlying suits.

{¶4} While the case was pending, Chiquita settled with Federal, American Motorists and Lumbermens Mutual. Both Chiquita and National Union filed motions for summary judgment. The trial court granted Chiquita's motion in part. It held that National Union had a duty to defend Chiquita in the underlying suits as a matter of law. The court also found that issues of fact existed as to other issues in the case, and denied the motions for summary judgment on those issues.

{¶5} After a bench trial, the trial court determined the amount of defense costs for which National Union was required to reimburse Chiquita. It also found that National Union was responsible for all losses that occurred during the time its policies were effective. National Union has filed a timely appeal from that judgment.

{¶6} National Union presents two assignments of error for review. In its first assignment of error, it contends that the trial court erred in finding that it had a duty to defend Chiquita in the underlying lawsuits. It argues that the underlying actions do not allege an "occurrence" as defined in the policies because Chiquita faced liability only for intentional conduct. It also argues that all the injuries for which Chiquita faced liability occurred in Columbia, outside of the National Union's policies' coverage territory. This assignment of error is well taken.

{¶7} An insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061 (1984). The interpretation and construction of insurance policies is a matter of law to be determined by the court

using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982); *Equity Diamond Brokers, Inc. v. Transnatl. Ins. Co.*, 151 Ohio App.3d 747, 2003-Ohio-1024, 785 N.E.2d. 816, ¶ 10 (1st Dist.). Where an insurance policy's provisions are clear and unambiguous, courts must apply the terms as written and may not enlarge the contract by implication to embrace an object distinct from that contemplated by the parties. *Gomolka* at 168; *Equity Diamond Brokers* at ¶ 11.

{¶8} An insurer's duty to defend is broader than the duty to indemnify. *Sharonville v. Amer. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13; *Westfield Ins. Co. v. Factfinder Mkting. Research, Inc.*, 168 Ohio App.3d 391, 2006-Ohio-4380, 860 N.E.2d 145, ¶ 15 (1st Dist.). When the allegations in the complaint or any allegations arising after the complaint state a claim that is potentially within the policy coverage, the insurer must accept the defense of the claim, regardless of the ultimate outcome or the insurer's ultimate liability. *Sharonville* at ¶ 13; *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984); *Westfield Ins.* at ¶ 15. When an insurer must provide a defense on a claim, it must defend the insured on all the other allegations, regardless of whether they are related to the insurance-policy coverage. *Sharonville* at ¶ 13; *Westfield Ins.* at ¶ 15.

{¶9} But a duty to defend does not attach where the conduct alleged is indisputably outside the scope of coverage. *Sharonville* at ¶ 13; *Westfield Ins.* at ¶ 15. The insured bears the burden to show that its loss was covered under the policy. *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 273, 719 N.E.2d

4

955 (1999); *Fairfield Machine Co., Inc. v. Aetna Cas. & Sur. Co.*, 7th Dist. No. 2000 CO 14, 2001-Ohio-3407, ¶ 22; *Sterling Merchandise Co. v. Hartford Ins. Co.*, 30 Ohio App.3d 131, 137-138, 506 N.E.2d 1192 (9th Dist.1986).

{¶10} In this case, the policy covers "bodily injury" if the "bodily injury * * * is caused by an occurrence that takes place in the coverage territory." An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Thus, the policies cover only accidental occurrences, not intentional acts. *See Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 38, 665 N.E.2d 1115 (1996).

{¶11} Further, Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts. *Id.* Thus, inherent in a policy's definition of "occurrence" is the concept of an incident of an accidental, as opposed to an intentional, nature. *Id.*; *Morner v. Giuliano*, 167 Ohio App.3d 785, 2006-Ohio-2943, 857 N.E.2d 602, ¶ 25 (12th Dist.). "Liability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial or criminal conduct." *Gearing* at 38.

{¶12} In finding that National Union had a duty to defend Chiquita, the trial court examined the complaints in the underlying actions. It stated that "[t]hese complaints all make serious allegations of intentional even malicious conduct against Chiquita. However, each complaint, to some extent makes allegations of negligence. I have no idea whether the Plaintiffs will prevail on their claims of intentional misconduct and/or negligent misconduct. Those are questions for a trier of fact to determine." It went on to find that based solely on the allegations in those

complaints, National Union owed Chiquita a defense. We disagree with the court's reasoning.

{¶13} In finding that National Union owed Chiquita a duty to defend, the trial court relied on *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, 913 N.E.2d 426. In that case, 17-year-old Benjamin White stabbed Casey Hilmer, the 13-year-old daughter of Steven and Megan Hilmer. *Id.* at ¶ 5. The Hilmers sued Benjamin and his parents, Lance and Diana White, raising multiple claims, including battery against Benjamin and negligent supervision, negligent entrustment, and negligent infliction of emotional distress against Lance and Diana. A jury found in favor of the Hilmers. The Whites had a homeowner's policy and a separate umbrella policy with Safeco Insurance Company of America. Safeco argued that it had no duty to defend Lance and Diana White because any claim against them arose out of their son's intentional act.

{¶14} The Supreme Court held:

1. When a liability insurance policy defines an "occurrence" as an "accident," a negligent act committed by an insured that is predicated on the commission of an intentional tort by *another* person, e.g., negligent hiring or negligent supervision, qualifies as an "occurrence."

2. Insurance-policy exclusions that preclude coverage for injuries expected or intended by an insured, or injuries arising out of or caused by the insured's intentional or illegal acts, do not preclude coverage for the negligent actions of other insureds under the same policy that are

6

predicated on the commission of those intentional or illegal acts, e.g. negligent hiring or negligent supervision. (Emphasis added.)

*Id.* at paragraphs one and two of the syllabus.

{¶15} While acknowledging that the policy exclusions relating to intentional and illegal acts "plainly applied" to Benjamin's acts, the Supreme Court emphasized the "separate nature" of the negligent-supervision and negligent-entrustment torts against his parents. To succeed on those claims, the Hilmers had to show that Lance and Diana had breached their duty to supervise Benjamin and not to entrust him with a dangerous instrument, and that those breaches proximately caused their injuries. *Id.* at ¶ 34-35. The court stated, "In this case, neither Lance nor Diane intentionally injured Casey Hilmer. From their perspective, the injury was accidental, and thus the act that caused her injury constitutes an "occurrence" as defined in the policies they purchased from Safeco." *Id.* at ¶ 27.

{¶16} In this case, the negligence claims in the underlying suits do not stem from the negligent actions of an insured arising from the intentional act of another insured. The negligence claims against Chiquita arise from its own intentional acts, not the acts of another insured party. Therefore, the holding in *Safeco* does not apply. *See Sanders v. Nationwide Mut. Ins. Co.*, 8th Dist. No. 95228, 2011-Ohio-1933, ¶ 18-20.

{¶17} Further, the trial court stated that *Safeco* applied without examining the nature of the underlying negligence claims. "The mere insinuation of negligence in a civil suit complaint cannot transform what are essentially intentional torts into something 'accidental' that might be covered by insurance." *Snowden v. Hastings*

7

*Mut. Ins. Co.*, 177 Ohio App.3d 209, 2008-Ohio-1540, 894 N.E.2d 336, ¶ 13 (7th Dist.). *Accord Motorists Mut. Ins. Co. v. Merrick*, 11th Dist. Nos. 98-T-0188 and 98-T-0189, 1999 Ohio App. LEXIS 5240, *8 (Nov. 5, 1999); *Snell v. Katafias*, 2d Dist. No. 17440, 1999 Ohio App. LEXIS 997, *13 (Mar. 19, 1999).

{¶18}   Our review of the record shows that although the underlying complaints set forth some causes of action sounding in negligence, those causes of action were all based on Chiquita's alleged intentional conduct. The complaints alleged that Chiquita was both directly and vicariously liable for the deaths and injuries of numerous people through murder, torture, kidnapping and other atrocities. They claimed that Chiquita aided and abetted, conspired with, and particiated in a joint criminal enterprise with the terrorists. The complaints did not allege conduct that could be reasonably construed as negligent or accidental. Therefore the conduct alleged in the complaints for which Chiquita sought coverage and defense did not constitute "occurrences" within the meaning of the policy language.

{¶19}   We note that the National Union policies also contained exclusions for "bodily injury" or "property damage" "expected or intended from the standpoint of the insured." We need not reach the issue of whether those exclusions apply because we hold that the conduct alleged in the underlying cases did not constitute "occurrences." Because the conduct in those complaints was outside the scope of coverage, National Union did not have a duty to defend Chiquita in the underlying suits or to indemnify Chiquita should it eventually be found to be liable for damages in those suits.

8

{¶20} National Union also argues that all the injuries for which Chiquita faced liability occurred in Columbia, outside of its policies' coverage territory. We agree. National Union's policies stated that it would pay damages for injuries caused by an "occurrence" in "the coverage territory." The policies defined the "coverage territory" as "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada." Chiquita had purchased policies from the settling insurance companies to cover its foreign liability.

{¶21} In ruling on the motions for summary judgment, the trial court stated that "[t]he allegations of negligence in the various complaints meet the coverage territory requirement in all the insurance policies at issue since the negligence may well have taken place within the coverage territory." Following a bench trial, the trial court found that the decision to pay the terrorist groups was made at Chiquita's corporate headquarters in Cincinnati, Ohio. The employees in Columbia simply implemented that policy with the goal of protecting Chiquita's employees and property. Therefore, the trial court concluded, the location of the occurrence was within the coverage territory. We disagree with that conclusion.

{¶22} We find no Ohio cases directly on point, but the "great weight of case law" from other jurisdictions holds that "it is the location of the injury—not some precipitating cause—that determines the location of the event for purposes of insurance coverage." *ACE Am. Ins. Co. v. RC2 Corp., Inc.*, 600 F.3d 763, 768 (7th Cir.2010). *Accord CACI Internatl., Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 156-157 (4th Cir.2009).

{¶23} The issue frequently arises in cases involving the place of an "occurrence," such as where, as in the present case, an injury is sustained outside of the United States because of some act or omission in the United States and the disputed policy limits coverage to the United States. "The location of an 'occurrence' is determined by the place where the injury happened; it does not matter that a precipitating event took place elsewhere." *Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1296 (10th Cir.1996). *See also DeWitt v. Nationwide Mut. Fire Ins. Co.*, 109 Ohio App.3d 716, 720-721, 672 N.E.2d 1104 (11th Dist.1996); *Flintcote Co. v. Gen. Acc. Assurance Co. of Canada*, 410 F.Supp.2d 875, 891-892 (N.D.Cal.2006).

{¶24} For example, in *ACE*, the insurance policy contained an exclusion for occurrences that took place in the United States. The underlying suits involved products using lead paint that were sold and used exclusively in the United States, but manufactured in China. The insurance company argued that the "occurrence" took place in the United States where purchasers of the products were exposed to lead paint. The manufacturer argued that the "occurrence" took place in China where the negligent acts that "caused" the harm took place.

{¶25} The federal district court accepted the manufacturer's argument. It found that notwithstanding the exclusion, the policies potentially extended coverage for injuries that occurred in the United States if some negligent act in the process of the product's manufacturing that caused harm occurred in another country. Therefore, it held that the insurance company had a duty to defend the manufacturer.

{¶26} The Seventh Circuit Court of Appeals reversed, stating that "the policies are clear that the 'occurrence' that triggers coverage takes place where the actual event that inflicts the harm takes place. And based on the undisputed facts in this case, the 'occurrence" here happened at the location (or locations) of the exposure itself: within the United States." *ACE Am. Ins.*, 600 F.3d at 769. The court went on to state that accepting the manufacturer's argument "would allow it to sweep any domestic event into its international policies so long as it posited some antecedent negligent act that occurred someplace outside the United States." *Id.*

{¶27} Similarly, in *CACI*, CACI argued that its insurance company had a duty to defend it in lawsuits relating to claims of abuse and torture at prisons in Iraq even though the insurance policies limited coverage to the United States and Canada. The Fourth Circuit Court of Appeals rejected that argument, stating:

> [E]ven assuming that the complaint alleges activities that happened in the United States, the great weight of case law holds that it is the location of the injury—not of some precipitating cause—that determines the location of the event for purposes of insurance coverage. The reasons for a "place of injury" test are clear. As the district court noted, applying a "cause in fact" test would let plaintiffs sweep any number of worldwide events into the ambit of a domestic policy as long as the underlying complaint alleged negligent supervision. Therefore, a causal test would create a windfall for the insured and render "the insurer responsible for a liability for which it had not contracted." If domestic policies could be stretched to this

11

extent, global policies would become superfluous and territorial coverage limitations would lose their meaning. (Citations omitted.)

*CACI Internatl.*, 566 F.3d at 156-157, quoting *Keystone Automated Equip. Co. v. Reliance Ins. Co.*, 369 Pa.Super. 472, 535 A.2d 648, 652 (Pa.Super.Ct.1988).

{¶28} We agree with the reasoning of these courts. In this case, the events that inflicted the harm alleged in the underlying complaints took place in Columbia. Those events were the "occurrences" as defined in the policies as a matter of law. Chiquita's decision to pay the terrorists was merely a precipitating event. Consequently, the "occurrences" did not happen in United States, the coverage territory. Therefore, the conduct in the underlying complaints was not within the scope of coverage, and National Union had no duty to provide Chiquita a defense in the underlying suits.

{¶29} In sum, we find no issues of material fact. Construing the evidence most strongly in Chiquita's favor, reasonable minds can come to but one conclusion—that National Union did not have a duty to defend Chiquita in the underlying suits because those suits did not allege conduct that constituted an "occurrence" in the coverage territory. National Union was entitled to judgment as a matter of law, and the trial court erred in failing to grant summary judgment in favor of National Union. *See Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Greene v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741, 908 N.E.2d 975, ¶ 23 (1st Dist.) The court further erred in granting partial summary judgment in favor of Chiquita, and in holding a bench trial on the alleged factual issues.

{¶30} Consequently, we sustain National Union's first assignment of error, and we reverse the trial court's judgment in favor of Chiquita. We remand the matter to the trial to enter judgment in favor of National Union, and to consider whether National Union is entitled to repayment of any defense costs it has already paid.

{¶31} Our ruling on National Union's first assignment of error renders its second assignment of error moot, and we decline to address it. *See* App.R. 12(A)(1)(c); *Internatl. Assn. of Bridge, Structural, Ornamental & Reinforcing Iron Workers, Local 372 v. Sunesis Constr. Co.*, 183 Ohio App.3d 438, 2009-Ohio-3729, 917 N.E.2d 343, ¶ 26 (1st Dist.).

Judgment reversed and cause remanded.

HILDEBRANDT, P.J., and HENDON, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.