[Cite as *Cummings v. Lyles*, 2015-Ohio-316.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101446**

**LATASHA CUMMINGS, AS PARENT, ETC.**

PLAINTIFF-APPELLANT

vs.

**JULIUS LYLES III, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-792000

**BEFORE:** McCormack, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 29, 2015

**ATTORNEY FOR APPELLANT**

Grant A. Goodman
1360 West 9th Street, #410
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEES**

**For Julius Lyles, III**

William T. Neubert
3645 Warrensville Center Road, Suite 241
Shaker Heights, OH 44122

**For GEICO Indemnity Company**

Louis R. Moliterno
Williams, Sennett & Scully Co.
2241 Pinnacle Parkway
Twinsburg, OH 44087-2367

TIM McCORMACK, J.:

**{¶1}** Latasha Cummings ("appellant") appeals from the judgment of the Cuyahoga Court of Common Pleas that granted summary judgment in favor of GEICO Indemnity Company ("GEICO"). Appellant is the parent of Kenshawn Cummings, who was injured when a vehicle driven by Julius Lyles III struck Kenshawn's bicycle. Lyles subsequently pleaded guilty to felonious assault of Kenshawn. GEICO, who had issued automobile insurance to Lyles, claimed no coverage existed because of the intentional-act exclusion in Lyles's policy. Applying the case law precedent from this court, we conclude there is no genuine issue of material fact regarding the exclusion of coverage in this case, and therefore affirm the summary judgment granted by the trial court in GEICO's favor.

## Substantive Facts and Procedural History

**{¶2}** On August 17, 2010, Lyles's son had his bicycle stolen in a park. The boy told his father that he and his friend were roughed up by two teenagers, who took their bikes, book bags, and basketball. The next day, Lyles and his sons went looking for the stolen bicycle. Ten or twenty minutes later, Lyles saw a group of boys on a residential street. Lyles believed one of them, later identified as Kenshawn Cummings, was the one who stole his bicycle. Lyles yelled for Kenshawn, who was riding a bicycle, to stop. Kenshawn did not stop and continued on his bicycle. Lyles pursued him in his Ford Explorer. The Explorer struck Kenshawn's bicycle moments later. Kenshawn sustained serious injuries from the incident.

**{¶3}** The Euclid Police Department investigated the incident. Lyles was subsequently charged with attempted murder and felonious assault. He pleaded guilty to felonious assault, a second-degree felony, and received a three-year prison term.

**{¶4}** Appellant, Kenshawn Cummings's mother, filed the instant lawsuit on behalf of Kenshawn against Lyles, seeking compensation for the injuries sustained by Kenshawn in the incident.

**{¶5}** GEICO had issued an automobile insurance policy to Lyles. The policy specifically excluded coverage for bodily injury or property damage that is caused "intentionally." Asserting the policy exclusion, GEICO filed an intervening complaint, seeking a declaratory judgment that GEICO has no duty to indemnify or defend Lyles regarding the incident.

**{¶6}** GEICO subsequently moved for summary judgment. In support of its motion, it submitted the police report of the incident and the trial court's docket in the criminal case, as well as deposition testimony of two eyewitnesses, Darryl and Vickey Montgomery. Appellant also moved for summary judgment on the issue of GEICO's policy coverage. She filed the deposition testimony of Lyles to support her motion.

**Deposition Testimony of Eyewitnesses**

{¶7}   Vickey and Darryl Montgomery live near the scene of the incident. Vickey Montgomery witnessed the incident from her garage.   She saw a boy riding a bicycle with two other boys who were walking.   The vehicle driven by Lyles came on the scene, and the two boys on foot started running.   The boy on the bicycle, looking "scared," started to pedal fast too. The vehicle stopped right in front of the Montgomerys' house.   After stopping, the driver put the vehicle in reverse, backed up the distance of two houses, then drove forward.   It jumped over a curb and drove across a front yard, before striking the boy's bicycle.   Vickey testified that while driving forward, the vehicle did not slow down or brake before the collision.   She testified that, based on what she saw — the driver first backed up and then put the vehicle into drive — it appeared the driver "was intending on running [the boy] over."

{¶8}   Darryl Montgomery testified similarly and corroborated Vickey's account of the event.   He estimated the vehicle's speed at impact to be between 30-50 mph.   The driver did not appear to brake or slow down before it struck Kenshawn.   When the vehicle went over the curb, Darryl first thought the driver lost control.   When the vehicle kept on going and drove through a front yard, Darryl knew "something was wrong."   Darryl identified in a photograph of the scene the path of the vehicle; the photograph clearly showed the vehicle's tracks going over a curb and continuing through a front yard where it struck the bicycle.

{¶9}   Lyles testified to the following in his deposition.   His son told him his bicycle was stolen by a group of older boys.   The next day, he and his two sons determined to go out in his Ford Explorer to look for the stolen bicycle.   He saw a group of boys on a residential street, and believed one of the boys on a bicycle was the one who stole his son's bicycle.   He yelled for the boy to stop.   Instead of stopping, the boy cut around the front of his vehicle and rode his

bike in the opposite direction past his Explorer. To pursue the boy, Lyles put his vehicle in reverse, drove backwards for about two driveways. The boy then cut around his vehicle again to go forward, now heading in the same direction as the vehicle. Continuing his pursuit, Lyles put his vehicle in drive and went forward. According to him, in the seconds before impact, the boy's bicycle was off to the passenger side of his vehicle, and, without warning, the boy made a sudden move and turned directly in front of his vehicle, causing a collision. Lyles testified that he only intended to stop the boy, slow him down, and scare him. He did not realize his vehicle went off the street or over the curb.

{¶10} The trial court granted GEICO's motion for summary judgment and denied appellant's motion for partial summary judgment on the issue of insurance coverage. On appeal, appellant raises one assignment of error, claiming the trial court erred in granting GEICO's motion for summary judgment.

## Standard of Review

{¶11} Summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Civ.R. 56(C). We review the trial court's judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

## Guilty Plea Creates a Rebuttal Presumption Excluding Coverage

{¶12} The felonious assault Lyles pleaded guilty to is defined by R.C. 2903.11(A)(1). It states, "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * ." R.C. 2901.22(B) defines "knowingly." "A person acts knowingly, regardless of his purpose, when he

is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶13} Lyles's GEICO policy excludes coverage for "[b]odily injury or property damage caused intentionally by or at the direction of an insured." The issue in this appeal is then whether Lyles's admission of "knowingly" caused serious physical harm excluded coverage pursuant to the policy's intentional-act exclusion clause.

{¶14} "Ohio public policy generally prohibits obtaining insurance to cover damages caused by intentional torts." *Chiquita Brands Internatl., Inc. v. Fed. Ins. Co.*, 1st Dist. Hamilton No. C-120019, 2013-Ohio-759, ¶ 11. "Liability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial or criminal conduct." *Id.* Consequently, most insurance policies contain an intentional-act exclusion stating that the insurance company will not be liable for harm intentionally caused by the insured. *Allstate Ins. Co. v. Campbell,* 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 9.

{¶15} "A plea to a crime requiring a 'knowing' state of culpability is sufficient to invoke a policy exclusion for bodily injury expected or intended by the insured; intent may be inferred from the criminal conviction itself." *Arrowood v. Grange Ins. Co.*, 8th Dist. Cuyahoga No. 82487, 2003-Ohio-4075, ¶ 31, citing *Allstate Ins. Co. v. Cole*, 129 Ohio App.3d 334, 717 N.E.2d 816 (9th Dist.1998).

{¶16} The "submission of a guilty plea to a criminal charge, for a crime of which intent is an essential element, is strong enough proof so as to eliminate all doubt as to whether an insured's conduct would be deemed 'intentional' for purposes of an 'intentional act' exclusion." *Motorists Mut. Ins. Co. v. Manning*, 11th Dist. Geauga No. 96-G-1999, 1997 Ohio App. LEXIS

3581, *8 (Aug. 8, 1997), citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 115, 507 N.E.2d 1118 (1987).

{¶17} This court entertained a similar matter in *State Farm Fire & Cas. Co. v. Harpster*, 8th Dist. Cuyahoga No. 90012, 2008-Ohio-3357. In that case, the insured pleaded guilty to aggravated assault, an offense defined as "knowingly causing serious harm" while "under the influence of sudden passion or in a sudden fit of rage" brought on by serious provocation from the victim. The insurance company denied coverage because of the guilty plea and conviction. In opposing summary judgment filed by the insurance company, the insured submitted an affidavit averring that he never intended to hit the victim and that the victim's injuries occurred when he tripped and fell into the victim. The insured argued that the dispute was fact-intensive and could not be resolved through deposition and affidavit testimony.

{¶18} This court disagreed. Recognizing the precedents on this issue, this court affirmed the summary judgment in favor of the insurance company. This district noted that all Ohio courts that have addressed the issue have held that a criminal conviction, in and of itself, can establish intent for the purposes of applying an intentional-acts exclusion when the insurance company moves for summary judgment on that issue. *Id*. at ¶ 42, citing *Westfield Ins. v. Barnett*, 7th Dist. Noble No. 306, 2003-Ohio-6278; *Nearor v. Davis*, 118 Ohio App.3d 806, 694 N.E.2d 120 (1st Dist.1997); *Baker v. White*, 12th Dist. Clermont No. 2002-08-065, 2003-Ohio-1614; *Adkins v. Ferguson*, 5th Dist. Ashland No. 02 CA 34, 2003-Ohio-403; *Lingo v. State Farm Fire & Cas. Co.*, 8th Dist. Cuyahoga Nos. 69514 and 70753, 1996 Ohio App. LEXIS 5444 (Dec. 5, 1996).

{¶19} This court reasoned in *Harpster* that although the offense of aggravated assault requires an element of "knowledge" rather than "intent," one who commits aggravated assault —

knowingly caused serious physical harm — does so with a reasonable expectation that injury will occur. *Harpster* at ¶ 45. This court, therefore concluded that by pleading guilty to aggravated assault, the insured admitted he knowingly caused serious physical harm to the victim; in other words, the victim's injuries were both expected and intended. *Harpster* at ¶ 46.

{¶20} We are aware that in an earlier case, *Nationwide Mut. Ins. Co. v. Machniak*, 74 Ohio App.3d 638, 641, 600 N.E.2d 266 (8th Dist.1991), this court held that, although admissible, a felonious assault conviction does not conclusively establish an intent to harm, because felonious assault involves a mental state of "knowingly" rather than "purposely."

{¶21} *Harpster* and *Machniak* can be harmonized. *Machniak* recognized the same principle that the insurer must demonstrate that the injury was "expected or intended" in order for the exclusionary clause to apply. *Machniak*, however, determined the record before it was too limited to determine the issue.[1] In *Harpster*, this court explained that the mere fact that the insured submitted a self-serving affidavit that essentially recanted his earlier admission of wrongdoing does not, in and of itself, "give rise to a triable issue of fact" in light of the evidence submitted by the insurance company, which more than adequately demonstrated an absence of genuine issues of material fact regarding whether the insured expected or intended bodily injury. *Harpster* at ¶ 47, 51. Without specifically stating it, this court's analysis in *Harpster* was premised on the notion that a guilty plea to a "knowing" criminal offense created a strong, rebuttable presumption that the injury was "expected and intended."

---

[1] In *Machniak*, the insured was involved in an altercation with a third party, who was driving with the victim; the victim herself was not involved in the altercation. After the altercation, the insured, driving in his vehicle, pursued the third party's vehicle. The victim attempted to exit from the third party's vehicle and fell to the ground. The insured pulled around the third party's vehicle and ran over the victim's arm. The insured pleaded guilty to felonious assault.

{¶22} This court applied the same analysis in a subsequent case, *Sanders v. Nationwide Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 95228, 2011-Ohio-1933, *discretionary appeal not allowed*, 130 Ohio St.3d 1416, 2011-Ohio-5605, 956 N.E.2d 308. In that case, the insured's 17-year-old son, who suffered from a psychotic disorder that diminished his cognitive ability, set fire to their house and subsequently admitted in juvenile court to attempted aggravated arson. Aggravated arson is defined as "knowingly" causing harm to a structure by means of fire. The insurance company denied coverage on the ground that intentional acts were excluded from coverage.

{¶23} Although this court applied the same analysis, in *Sanders* we found a genuine issue of material fact existed regarding whether the 17-year-old was capable of forming the intent to damage the house by starting a fire. This court reasoned that the admission to the arson offense was evidence of intent. It created a rebuttable presumption and shifted the burden to the other party to show lack of intent. *Id.* at ¶ 57. Because the evidence regarding the juvenile's psychotic state was more than a recantation, this court concluded a genuine issue of material fact remained regarding whether the juvenile possessed the intent for the coverage to be excluded.

{¶24} In the present case, GEICO submitted deposition testimony of two disinterested witnesses who saw Lyles drive onto a lawn to pursue Kenshawn at a relatively high speed without braking. Lyles, despite admitting to "knowingly" caused serious physical harm to Kenshawn, testified at his deposition in the insurance matter that he only intended to scare the victim and blamed the victim for the collision. The trial court below applied *Harpster* to grant summary judgment in favor of GEICO.

{¶25} Reviewing the matter de novo, we likewise do not find *Harpster* distinguishable from this case. Because of the insured's guilty plea to felonious assault, it was appellant's

burden to rebut the assumption of intent and to create a triable issue of fact.     As the insured did

in *Harpster*, Lyles essentially recanted his earlier admission of "knowing" wrongful conduct.

As this court noted in *Harpster*, because it is always in the interest of the insured to establish

coverage, an insured self-serving statement is of negligible value.    *Id.* at ¶ 49, citing *Nationwide*

*Mut. Ins. Co. v. Layfield*, 11th Dist. Lake No. 2002-L-155, 2003-Ohio-6756, ¶ 12.   Lyles's

recanting testimony failed to rebut the presumption of intent and to create a genuine issue of

material fact for trial, in light of the deposition testimony from two neutral witnesses showing

Lyles's vehicle pursued the victim in excessive speed without braking and hit the victim's

bicycle.   GEICO has demonstrated the absence of a genuine issue of material fact regarding

whether the insured expected or intended bodily injury.

**{¶26}** The judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas

court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

LARRY A. JONES, SR., P.J., and
SEAN C. GALLAGHER, J., CONCUR